[Civil No. 1488.  Filed November 17, 1915.]

[152 Pac. 863.]

F. W. PIPER, Appellant, v. J. B. TAYLOR, Appellee.

1. APPEAL AND ERROR—RECORD—PERFECTION.—Civil Code of 1913, paragraph 603, requires the transcript to be filed within 60 days after entry of judgment, or within such additional time as may be stipulated between the parties or allowed by the judge. *Held* that, though paragraph 1233 gives six months for the taking of appeals, the transcript, to become part of the record, must be filed within the 60 days fixed.

2. APPEAL AND ERROR—REVIEW—PRESUMPTIONS.—Where the evidence is not before the appellate court, it must be presumed that an order of the trial court, granting a nonsuit on the ground that the evidence was insufficient to support the allegations of the complaint, was correct.

3. APPEAL AND ERROR—REVIEW—NONSUIT—"INVOLUNTARY NONSUIT."—While under Civil Code of 1913, paragraph 519, providing for voluntary nonsuit, an "involuntary nonsuit," defined as an order entered for the neglect of either party to appear or to present evidence to sustain a verdict in his favor, is not authorized, the act of the trial court in entering an involuntary nonsuit against a plaintiff who did not produce sufficient evidence to warrant a finding in his favor, which was without prejudice to his right to commence a suit anew, was harmless, though erroneous, for it gave plaintiff greater rights than those to which he was entitled.

APPEAL from a judgment of the Superior Court of the County of Mohave.  Carl G. Krook, Judge.  Affirmed.

STATEMENT OF FACTS BY THE COURT.

This action was commenced by F. W. Piper, as the plaintiff, to recover of the defendant the agreed value of goods, wares and merchandise, viz., $96; to recover $225, money loaned at divers times and in divers sums; to recover for meals, board, bed and room furnished defendant, of the value of $72; to recover for washing, laundry work and mending furnished defendant, of the value of $10.  The plaintiff alleges that each of said items so furnished was furnished the defendant by the plaintiff "at the special instance and request of defendant," and that the defendant promised and

agreed to pay the same, and "that the property and premises where the defendant was working and operating, and for the use and benefit of which the said goods, materials, supplies and services, and cash were consumed and used by defendant, are described as follows, to wit," describing three mining claims by reference to the mining district and by name of the claims and the book and page where their location notices are recorded. The complaint alleges that the aggregate sum of $403 is due, owing and unpaid, and that payment has been demanded, and prays judgment. For a second cause of action the complaint alleges that between the sixth day of July, 1913, and the twenty-second day of November, 1913, one James A. Piper performed work and labor for the defendant, at said defendant's special instance and request, upon the said mines; that the work and labor was so done and performed at the stated and agreed price and rate of $4.50 per day, and said James A. Piper worked for a period of 96 days, and that therefore the defendant is indebted in the sum of $432, which sum defendant agreed to pay, but has not paid the same or any part thereof; that about the twentieth day of August, 1914, and before this action was commenced, "the said J. A. Piper, for a valuable consideration, sold, assigned, transferred and set over unto this plaintiff all of his right, title, interest, claim and demand of, in and to said account against the said defendant," and the right to collect and discharge the same, and that plaintiff is now the owner and holder of said account. It is alleged that the defendant has not paid the same, and that payment has been demanded. The plaintiff prays for judgment for said sum of $432. To this complaint the defendant demurred, and answered by denying all the allegations of the complaint, and, specially answering, alleged that James A. Piper, mentioned in the complaint, is a minor son of F. W. Piper, and "that whatever of goods, wares, merchandise, money, meals, bed, board, rooms, laundry work, mending, labor and services that were furnished to defendant by the said F. W. Piper or the said James A. Piper were furnished to said defendant under and by virtue of a contract between said defendant and the said F. W. Piper and James A. Piper, by virtue of which said contract the said F. W. Piper and James A. Piper agreed to furnish to defendant certain materials, labor, goods, wares and merchandise, etc., to be used in

and about the mining property in said complaint described; and in return for said goods, wares, merchandise, work, labor, etc., said defendant agreed that extension mining claims should be located touching said described mining claims, and that these said extension mining claims should be the property of the said F. W. Piper and James A. Piper; that all the items mentioned in plaintiff's complaint as having been furnished were furnished under the said contract as aforesaid; that defendant did not promise . . . or agree to pay plaintiff or said James A. Piper for any of said goods, wares, merchandise, labor and other items otherwise than as herein alleged; and that defendant has done and fully performed his part to the contract with said F. W. Piper and James A. Piper made.''

On October 20, 1914, the cause came on for trial upon the merits, the demurrer having been waived. The plaintiff offered testimony of F. W. Piper and James A. Piper, whereupon the defendant moved ''for nonsuit.'' The plaintiff was granted time, until November 5, 1914, in which to amend his complaint or to secure additional evidence, and the cause was continued until November 5, 1914, ''to be heard upon defendant's motion for nonsuit.'' On November 5, 1914, the said motion was heard, and ''the court orders the cause dismissed without prejudice.'' The plaintiff excepted to the ruling, and requested that findings of fact and conclusions of law in full be shown in the judgment, which request was granted. On December 31, 1914, as of the date of November 5, 1914, the following formal judgment was filed, omitting the appearances, etc.:

'' . . . And evidence having been introduced on the part of the plaintiff, and the plaintiff having rested, the defendant through his attorney moved the court to dismiss said action on the ground that there was a variance between the evidence and the allegations of plaintiff's complaint, and, the court, being fully advised in the premises and having deliberated upon said motion, finds that said complaint was not borne out by the evidence adduced at the trial, and that there was a variance between the allegations of said complaint and the evidence introduced on the part of the plaintiff. Wherefore, by reason of the law and the evidence, it is hereby adjudged and decreed that said action be dismissed without prejudice,

and that defendant do have and recover his costs, taxed in the sum of $5."

On the twelfth day of March, 1915, the plaintiff gave his due notice of appeal to this court "from the judgment rendered in the said above-entitled court, in the above-entitled cause on the 15th (5th) day of November, 1914, in favor of the said defendant, J. B. Taylor, and against the said plaintiff, F. W. Piper: . . . "

On March 29, 1915, the undertaking and bond on appeal were filed in the cause. On April 10, 1915, the transcript of the reporter's notes of the testimony was filed by the plaintiff with the clerk of the said superior court, of which the defendant had notice on the same date. On May 29, 1915, the trial judge certified to the transcript of the reporter's notes, and the same was filed in this court on July 9, 1915. The appellant assigns error as follows:

"The ruling, order and judgment are assigned as error, upon the grounds: (a) Said ruling, order and judgment is contrary to law; and (b) under the laws of the state of Arizona, an involuntary nonsuit cannot be granted."

On July 29, 1915, the appellee filed his motion in this court to strike from the files the transcript of the reporter's notes, "for the reason that said transcript was not filed with the clerk of the court below in the manner and form, and within the time by law provided; that it appears from the records and files herein that said transcript was not filed with said clerk within 60 days after the entry of judgment in said cause, and there was no stipulation between the parties, or order of the court or judge in the case, allowing an extension of time for that purpose."

The appellant objects to the granting of the motion upon the grounds that the statute (Civil Code 1913, paragraph 603), under the authority of which the motion was filed, is inapplicable to the taking of appeals as the law now exists under changed conditions; that is, as stated by appellant in his words as follows:

"Clearly, the provisions of paragraph 603, requiring the record to be completed and filed prior to the giving notice, even, of an intention to take an appeal, being so repugnant to and inconsistent with the provisions of the later law (Civil Code 1913, paragraph 1233) brings the earlier law within the

rule stated as follows'' (stating the rule of construction of statutes from 26 Am. & Eng. Ency. of Law, 731, 734).

The cause was submitted upon the record and said motion and objections and the briefs of the respective counsel.

Mr. Ross H. Blakely, for Appellant.

Mr. W. E. Moroney, for Appellee.

CUNNINGHAM, J.—This record presents questions of practice which, while not decisive of this appeal, are frequently encountered in this court, and for that reason we will here notice before considering the decisive questions.

The matters of taking and perfecting appeals, and of completing and perfecting records of the trial court, are distinct matters, each being regulated by statute specially bearing upon the respective matter involved. The record of an action consists of the following:

Paragraph 602 of the Civil Code of 1913: "Every document and other object filed in a case shall constitute a part of the record thereof. All documents and objects offered in evidence, whether admitted or rejected, shall be marked appropriately as exhibits or for identification, and filed in the case. Either party to a suit may make the oral testimony and proceedings in a case, together with such rulings, orders or other action of the court in the case, as do not appear otherwise of record, a part of the record in the case by filing therein either a statement of facts, a bill of exceptions, or a transcript of the . . . reporter's notes as provided hereinafter."

We are not concerned with the matter of making the statement of facts and bill of exceptions a part of the record, and therefore they will not be noticed in this connection.

The question raised by the motion to strike is whether the transcript of the reporter's notes is a part of the record of the case which this court is required or permitted to consider in determining this appeal. To determine this question we must inquire whether the transcript of the reporter's notes has been made a part of the record in this case by either party, as provided by chapter 21, title 6, appearing therein following said paragraph 602, *supra.*

Paragraph 603 is as follows: "At any time within sixty days after the entry of judgment in the case, or . . . within

such additional or less time as may be stipulated between the parties, or within such additional time as may be allowed by the court or judge, by an order in the case, either party may file with the clerk of the court . . . a transcript of the court reporter's notes.''

Paragraph 604 provides: '' . . . If a transcript of the reporter's notes is filed a notice of the filing thereof shall be served upon the opposite party or his attorney.''

Paragraph 605 allows the party served with notice of the filing of the transcript of the reporter's notes to make and file with the clerk a written statement agreeing that the transcript of the reporter's notes is correct, or specifying wherein it is defective, and setting forth such amendments as he may deem necessary to make it correct. The opposite party must file such statement as he wishes to make, within 20 days after he is served with notice, or within such other time as may be stipulated by the parties or granted by the court. If such written statement is an agreement that the reporter's transcript is correct, the reporter's transcript and the said written statement shall be presented to the trial judge by the clerk immediately, if the judge be within the county. If the written statement presents amendments to the reporter's transcript, the party originally filing the reporter's transcript may withdraw the same within 5 days after service upon him of the written statement and amend it, and shall, within 5 days after withdrawing it refile the same, so amended, with the clerk of the court, and serve the opposite party notice that said reporter's transcript had been amended and refiled. The opposite party may, within 5 days after service of this last-mentioned notice, file with the clerk of the court a written statement, agreeing that the amended reporter's transcript is correct, or specifying wherein it is defective, and setting forth such amendments as he may deem necessary to make it correct, whereupon the amended reporter's transcript and both the written statements shall be presented to the trial judge by the clerk immediately, if the judge be in the county.

Paragraph 613 requires the clerk to forward the reporter's transcript and any statements filed to the judge immediately if he is out of the county, if requested so to do by either party, or, if not requested to so forward it, the clerk must present

the same to the judge immediately after his return to the county.

Paragraph 614 provides: ''When the . . . reporter's transcript is presented to the trial judge he shall certify thereto that the same is correct, or first amend it as it may require and then so certify it, and file it, together with the written statement or written statements, in the record of the case, within ten days after the same has been presented to him, unless both parties consent to a delay.''

Paragraph 615 provides that a failure on the part of a party on whom service has been made to agree to the correctness of the reporter's transcript, or to suggest amendments thereof, within the time provided, shall be deemed an admission of its correctness.

Paragraph 616 prescribes the procedure to be taken in case either party is dissatisfied with the transcript as certified and filed by the judge, and limits the time to ten days within which he must act.

Paragraph 617 provides the procedure that may be taken in case the trial judge dies, is removed from office, becomes disqualified, or refuses to certify the transcript, and provides how and by whom the same may be or be caused to be certified, without a time limit upon such procedure being prescribed.

These requirements of the statute by which the reporter's transcript may be made a part of the record are specific, easy to understand, liberal and mandatory. The time specified by the statute in which any necessary act in making the transcript a part of the record is required to be performed is a clear limitation within which period of time the act in question must be performed in order to be effective.

In order that the transcript of the reporter's notes may become a part of the record in a case, the same must be certified by the trial judge as correct, and by such trial judge filed in the record of the case. When the transcript has been seasonably presented to the trial judge, he is required to certify to its correctness, if he deems it correct, or first correct it and then certify to its correctness and file it in the record of the case within 10 days after it has been presented to him by the clerk, unless the parties consent to a delay.

A failure of the appellant or other party to file the re-
porter's transcript with the clerk within 60 days after the
entry of the judgment, or within such additional time as may
have been stipulated by the parties, or allowed by order of
the court, relieves the opposite party from the duty of examin-
ing the same as to its correctness, rebuts the presumption of
law that it is correct when it has remained with the clerk's
files 20 days, relieves the clerk from the duty of presenting
it to the judge immediately or at all, and relieves the trial
judge from the duty of examining and certifying as to its
correctness, and from filing it in the record of the case.  If
the document is not filed with the clerk within the time lim-
ited, either by statute, by stipulation of the parties, or by an
order of the court duly made, it loses all its characteristics
of becoming a part of the record in the same manner as any
other evidentiary document used on the trial, but not filed
until after the judgment has been rendered, would lose its
vitality by limitation of time.  When the time given expires,
the transcript comes too late to constitute a part of the record
of the case in the one instance, and in the other, when the
judgment is rendered and entered, the cause is closed for filing
documentary evidence.

The motion alleges that the transcript was not filed within
60 days after the entry of judgment in the cause, and alleges
that there was no stipulation between the parties, nor order
of the court or judge allowing additional time for the pur-
pose of filing said transcript with the clerk, and supports the
allegations by the record.  The record discloses that the judg-
ment was rendered on November 5, 1914, and entered and
formally filed on December 31, 1914, as of November 5, 1914;
that the transcript of the reporter's notes was filed by the
appellant with the clerk of the superior court on the tenth
day of April, 1915, and on that day the opposite party was
served with notice of the filing of said transcript.  The record
is silent as to any stipulation between the parties allowing
additional time, and no order of the court or judge appears
in the record extending the time or allowing additional time
to appellant to file such transcript with the clerk.  When the
appellant caused the reporter's transcript to be so filed 100
days had passed after the formal entry of the judgment on
December 31, 1914, and 156 days had passed after the rendi-

tion of the judgment on November 5, 1914. In this case we are not concerned with the question whether the period of 60-day limitation shall be deemed to commence at the time the judgment is announced by the court, or at the time the formal judgment is filed with the clerk, for in either event more than the statutory limitation had expired within which the transcript could be effectively filed with the clerk to the end that it could become a part of the record in the case. Consequently the act of filing the transcript with the clerk and all subsequent acts were without legal effect for any purposes of completing the record of the cause.

By force of law thereafter the reporter's transcript became simply the private notes of the oral testimony in the case, and was no more a part of the record than was the oral argument of counsel to the court or jury at the trial. The parties are granted time, after the close of the case, to make the oral testimony a part of the record, and a casual inspection of the statute granting the time for that purpose will convince one that diligence is the keynote of the statute. The record discloses that the appellant has not exercised that degree of diligence the law requires in such cases.

Appellant contends that the matter of causing the transcript of the reporter's notes to become part of the record is in some manner conflicting with the statutes regulating appeals, and, as paragraph 1233 of the Civil Code of 1913, provides that "an appeal may be taken from a final judgment of the superior court in a civil action, or special proceeding commenced in such court, at any time within six months after the rendition of such judgment," is repugnant to paragraph 603, because paragraph 603 requires the record to be completed and filed prior to the giving notice of an intention to appeal. The contention is untenable. The record is one thing, and the procedure on appeal is quite another. An appeal may be taken on the judgment-roll, and frequently appeals are so taken. Unless there be presented to this court a record, complete within itself, there is nothing for this court to consider, and therefore nothing can be done but expunge the matter from the files. An appeal, when perfected, brings up the judgment-roll as the complete record of the cause, unless other matters are made a part of the record.

The record here that may be considered on this appeal is a completed record, consisting of the complaint; the summons; the answers of defendant; the reply of plaintiff; the affidavit for a continuance filed; the minute orders certified by the clerk; the judgment; notice of appeal; appeal bond; and perhaps other minor documents filed at the trial. The reporter's transcript is no part of the record, for the reason it was never made and filed as such within the time limited by law for the purpose of making it a part of the record. For that reason we are precluded from considering the same as a part of the record of the case.

Whether the motion to strike be granted or not has been treated by this court in a number of cases as immaterial. The material thing is whether the transcript is a part of the record of the case, and that question is before this court for determination in every case presented, because the record determines the jurisdiction exercisable by the court.

The ruling of the court granting the defendant's motion "for a nonsuit," and the order of the court dismissing the cause, with the judgment, are assigned as error, and appellant contends that the issue of fact before the trial court was as follows:

"Did the defendant promise to repay the amounts advanced by plaintiff, and the reasonable value of the work and labor performed by plaintiff's assignor, or was there a contract between the parties whereby defendant was to locate certain mining claims for plaintiff, and did he do it?"

The contention is made that such was the issue of fact before the trial court made by the pleadings, and that the order and judgment are erroneous. By that contention we infer the appellant intends to insist that such question was erroneously determined by the trial court, and this appeal seeks to review the order and judgment.

The appellee seems to concede that the appellant states correctly the issue before the trial court. The pleadings are not as clear as they might have been made. The issues are clouded, but upon consideration in connection with the briefs of counsel, they may be fairly considered as raised by a complaint setting forth an express contract by which the plaintiff agreed to furnish, and did furnish, and advance to the defendant certain goods, wares, merchandise and money for

use by the defendant in his mining operations, and that the defendant agreed to pay therefor specified sums for the goods, wares and merchandise furnished and agreed to repay the money loaned him; that James A. Piper agreed to work for the defendant, and did work for the defendant 96 days, for which work the defendant agreed to pay therefor $4.50 per day, and this claim was duly assigned to the plaintiff. The answer, fairly considered, denies the allegations of the complaint as to the several agreements therein set forth, and as a special answer sets forth another separate and inconsistent contract entered into between the parties, alleging that the plaintiff agreed and promised to furnish the things, goods, wares, merchandise and the said labor set forth in both causes of action of the complaint, in consideration that the defendant locate certain mining ground for the plaintiff. In other words, that the contract pursuant to the terms of which plaintiff furnished the alleged goods, wares, merchandise, board, lodging, laundry and money, and caused his minor son to labor upon defendant's mines, was another and different contract from that set forth by plaintiff.

The issue of fact raised by the pleadings was: Pursuant to which of the said contracts did plaintiff furnish the alleged goods, services, money and labor—the contracts referred to in the complaint, or the contract referred to in the answer? When the plaintiff had offered his evidence in chief, the court ruled that the evidence so introduced by plaintiff failed to sustain the allegations of the complaint, and for that reason ordered the action dismissed without prejudice. This order is assigned as error. We have held that the evidence is not before this court; consequently, we must presume that the evidence was insufficient to support the allegations of the complaint.

But, concede that the evidence failed to sustain the complaint, and the ruling of the court was correct, was the order dismissing the cause without prejudice authorized? Is the judgment based upon such order such a judgment as the law imposes?

"A dismissal of a suit 'without prejudice' is no decision of the controversy on its merits, and leaves the whole subject of litigation as much open to another suit as if no suit had

ever been brought." *Newberry* v. *Ruffin,* 102 Va. 73, 45 S. E. 733.

And this is the evident effect of the judgment here involved.

This judgment, if it may be denominated a judgment other than for costs, was rendered by the court over the objections of the plaintiff. Plaintiff at the time of rendition resisted, and is still in this court resisting. In legal phraseology, the proceeding was clearly what is denominated an "involuntary nonsuit," suffered by the plaintiff against his protest and forced upon him by the trial court. The case was tried by the court without a jury, and the evidence produced by the plaintiff was not sufficient, in the opinion of the court, to sustain the allegations of the complaint. Evidently the judge so informed the plaintiff, and at plaintiff's request granted time in which plaintiff was at liberty to produce additional proof, or amend his complaint to conform to the proof then before the court. At the appointed time, the plaintiff appeared in court and elected to stand on his complaint and on the evidence then before the court. Whether he acted wisely or unwisely was not a question for the court's determination. The statute (Civil Code 1913, paragraph 519) gave the plaintiff a right to take a nonsuit "at any time before the decision is announced." But clearly the nonsuit must be taken by the plaintiff of his own volition, the necessity of which he alone must be the judge. The nonsuit authorized must be a voluntary nonsuit. The record here discloses that such nonsuit as ordered was as to the plaintiff wholly against his will; was as to him involuntary, and ordered against him for the reason the evidence he produced on the trial failed to sustain the allegations of his complaint, and therefore would be insufficient to sustain a judgment in his favor on the causes of action set forth in the complaint. As defined (4 Words and Phrases, 3764):

"An 'involuntary nonsuit' is for neglect either to appear, or, having appeared, for failure to present evidence to sustain a verdict in his favor, and is ordered against plaintiff's objection."

This judgment clearly comes within the latter clause of the definition, viz., the plaintiff having appeared, but failing, in the opinion of the trial court, to present evidence to sustain

a verdict or finding by the court in plaintiff's favor, and was
ordered against plaintiff's objection.

In *Bryan* v. *Pinney,* 3 Ariz. 34, 21 Pac. 332, decided in
1889, and in *Roberts* v. *Smith,* 5 Ariz. 368, 52 Pac. 1120,
the territorial supreme court holds under our Practice Act
(paragraph 519, Civil Code 1913, a continuation of para-
graph 1396, Revised Statutes of Arizona of 1901, as con-
tinuing paragraph 764, Revised Statutes of Arizona of 1887),
and under the recognized code practice, that an invol-
untary nonsuit cannot be allowed. In both cases cited the
court points out that the proper course is to instruct the jury,
or for the court, upon a trial without a jury, to render a ver-
dict, or judgment, as the case may be, for the defendant.
Such is the approved logical procedure to be followed in such
cases, and plaintiff in the prosecution of his lawsuit had and
has the right to proceed along the approved lines of practice.

But, is he injured? He yet has the right to commence his
action anew. He has not asked this court for a new trial—
the relief here prayed is a reversal. What judgment can
this court render that will give plaintiff the relief requested?

"The supreme court may affirm, reverse, or modify any
judgment or order appealed from, and upon reversal or modi-
fication such court may proceed to render such judgment or
order as the court below should have rendered, or may remand
the cause to the court below with directions to render such
judgment or order, or may direct that a new trial or other
proceedings be had, as justice may require." Paragraph
1268, Civil Code 1913.

If we affirm the judgment, plaintiff may commence his
action anew. Neither he nor the defendant is bound by the
judgment further than that the plaintiff failed in this law-
suit to present evidence sufficient to justify a judgment in
his favor. If we reverse the judgment, as appellant demands,
because the trial court had no authority to render such a judg-
ment, and render the judgment the court below should have
rendered, or remand the cause with instructions to the lower
court to render such judgment as the court should have ren-
dered, then it is clear on reversal this court should render
a judgment for the defendant, in the absence of the evidence
in the case. A reversal of the judgment is equivalent to a
refusal to plaintiff of an opportunity to commence his action

anew and have it tried on its merits. If we reverse the judgment and remand the cause, with directions that a new trial be granted the plaintiff upon the complaint as filed, we would make such order because justice required, and necessarily because the plaintiff would suffer an irreparable injury unless he be granted a new trial. Such could not occur. If the judgment is affirmed, he may have a new trial, or what is to all intents and purposes a new trial, without a reversal of the judgment, and without an order of this court. Justice to plaintiff does not require this court to reverse the judgment or order and grant a new trial.

The error of the trial court in ordering the suit dismissed without prejudice deprived the plaintiff of a right to a present, final disposal of the action. The court refused to finally determine the cause against the plaintiff. The error was purely technical, and worked no apparent injury to the plaintiff's rights. If the court had rendered the only judgment permitted upon the plaintiff's failure to present evidence in support of his alleged cause of action, that judgment would have been in favor of the defendant, and would carry the costs. The dismissal carries costs to the defendant. If the defendant was complaining upon the grounds that he was entitled to such a judgment as would finally end the litigation, and the record would disclose that the cause was dismissed without prejudice over his objection, as well as over the objection of the plaintiff, a very different case would be presented.

Plaintiff has not presented a record on this appeal which shows that his substantial rights have suffered injury. The record presented for our consideration, in the absence of the oral testimony, discloses a judgment more favorable to the plaintiff than he was entitled. The error in the proceedings is technical error in favor of the plaintiff, of which he ought not to be heard to complain. No substantial injustice has been done him.

While the ordering of an involuntary nonsuit against the plaintiff over his objections is irregular, and may be ordinarily reversible error, such proceedings, although improper and not authorized by code practice in this jurisdiction, are not necessarily reversible error in all cases, and in order to authorize a reversal, some substantial injury to the rights of the

party complaining, viz., the appellant, must flow necessarily from the order, and the record must clearly disclose the injury.

The procedure followed in the court below is condemned by this court as irregular, but under the peculiar circumstances disclosed, no substantial harm to the appellant can result therefrom; therefore a reversal is not justified.·

The order and judgment is affirmed.

ROSS, C. J., and FRANKLIN, J., concur.