[Civil. No. 3513.   Filed June 24, 1935.]

[46 Pac. (2d) 647.]

In the Matter of J. FRED HOOVER, Member of
the State Bar.

Mr. R. N. Campbell, for the State Bar.

Messrs. Struckmeyer & Jennings, for Respondent.

ROSS, J.—This is a disbarment proceeding instituted by the state bar of Arizona against J. Fred Hoover, a licensed attorney of the state and member of the state bar.

The state bar is a public corporation, made so by chapter 66, Laws 1933, and is governed by a board of governors chosen by the members of the state bar.

The county attorney of Yuma county having filed a complaint with the board of governors, hereinafter referred to as the board, charging respondent with unprofessional conduct, the matter was referred by the board to the local administrative committee of district No. 6, hereinafter referred to as the committee, consisting of Maricopa and Yuma counties,

for investigation and report. The committee, after holding preliminary meetings in Yuma county, where respondent resides and practices his profession, on February 23, 1934, issued an order to respondent to show cause why he should not be disciplined for professional misconduct, setting forth six accusations as a basis of the proceeding, which accusations read as follows (we omit accusations 2, 3, 4 and 6, since the board after a hearing thereon dismissed them):

"1. For purchasing on November 16, 1933. a bottle of cough syrup during the progress of a case entitled '*The State of Arizona* v. *Rola Marlow,*' No. 1890, then pending in the Superior Court of Yuma County, State of Arizona, in which case you represented the defendant, giving the bottle of cough syrup so purchased to the defendant Marlow and permitting him to testify under oath that he, the defendant Marlow, had purchased the said bottle of cough sryup just prior to the time when he was arrested."

"5. For filing in the case of *Bashore* v. *Bashore,* No. 6614, in the Superior Court of Yuma County, a petition for divorce alleging that the plaintiff had been a resident of the State of Arizona for one year next preceding the filing of the complaint when you knew from testimony given by her in other litigation in which you represented her, that the plaintiff had not been a resident of Arizona as claimed."

The respondent filed a verified and detailed answer to all of the charges, and denied that he was guilty of any misconduct. While he did not assert that the charges were stale and within the statute of limitations, he suggested in his answer that most of the matters and things alleged in the order to show cause arose many years prior to the filing of charges, namely, in the years 1928 and 1929.

The committee took evidence upon the charges and made its report and findings to the board. Along with its report the committee transmitted to the board the transcript of the evidence that had been sub-

mitted to it. The committee found that none of the charges was sustained except charge 5. The committee recommended suspension of respondent on charge 5 for such period of time as to the board seemed just. Thereafter, the board had a hearing upon the charges, at which evidence was submitted to sustain said charges and also to refute them. After considering all the evidence, that taken before the committee and that before the board, the board recommended to this court that respondent be reprimanded for his misconduct as set forth in charge 1, and that he be suspended for 60 days for his misconduct as set forth in charge 5.

The record was thereafter filed in this court, and an order to show cause was issued to respondent. Thereafter, the respondent filed his verified answer. ▆▆▆▆ We are satisfied that the board of governors went beyond and outside its powers when it made recommendations to this court. Section 29, chapter 66, *supra,* provides:

" . . . Upon conclusion of the hearing, if the board be of the opinion that the charges are without merit, it shall enter upon its records an order dismissing the same. If the board deems the evidence sufficient to merit further action, it shall make a minute entry to that effect in its proceedings and within thirty days from such determination shall file the record of its proceedings with the clerk of the supreme court, together with a reporter's transcript of all the evidence submitted at the hearing. . . . "

This language quite explicitly and plainly defines the extent of the powers of the board of governors. When it has reached the end of the proceeding pending before it, its power is to do one of two things: (1) Enter on its records an order dismissing the charge or charges; or (2) make a minute entry that it deems the evidence sufficient to merit further action. While this kind of record was not made by the board,

we think the fact that a record of all proceedings has been transmitted to this court confers jurisdiction upon the court to look into and pass upon the charges preferred against respondent, that were not dismissed by the board.

The board found that charges numbered 2, 3, 4 and 6 were not sustained, and that leaves for our consideration only charges numbered 1 and 5.

The facts in relation to charge No. 1, as near as we can determine from the record, are about as follows: One Rola Marlow had been informed against in the superior court of Yuma county by the county attorney for driving an automobile while under the influence of intoxicating liquor. Upon his trial the respondent was his attorney. Several witnesses had testified to smelling liquor on Marlow's breath, and that he was intoxicated. Marlow, as a witness in his own behalf, under questioning by respondent denied he had been drinking liquor or that he was under the influence of liquor; stated that he had a cold and had been taking some cough medicine that smelled like liquor; produced from his coat pocket a bottle, and stated it was similar to the kind he was using when arrested for intoxication on October 21, 1933; that he purchased the bottle from which he drank on October 21st from Minor's Drug Store in Yuma. The questions as to where he got the bottle he took from his pocket and his answers thereto are as follows:

"Q. And when did you buy this bottle? A. I never bought that bottle.

"Q. You never bought this? A. No.

"Q. Where did you get this bottle? A. Where did I get this bottle?

"Q. Where did you get this bottle? A. I got it down at the house.

"Q. Whose house? A. My house.

"Q. Well, did this come from Minor's too? A. Supposed to.

"Q. Did you buy it? A. Yes sir.

"Q. When did you buy it? A. I bought it just before I came up, before I was arrested.

"Q. Before you was arrested? A. Yes sir.

"Q. That was after the accident? A. Yes sir.

"Q. After the accident, and before you were arrested? A. Yes sir.

"Q. You bought this bottle off of Minor's? A. Yes sir."

After Marlow's trial was over, the county attorney investigated the story about this last bottle of cough medicine and learned that, at the morning intermission on the day of the trial, respondent bought a bottle of cough medicine from the Minor Drug Store. While the local administrative committee was investigating the matter, respondent explained to such committee that he bought of the Minor Drug Store, during the lunch hour of the trial day, a bottle of cough medicine and gave it to Marlow saying:

"Put that in your pocket, and if they ask you where you got it tell them I bought it. . . . He testified falsely. . . . and I have never denied buying that, and I don't figure I done anything dishonorable at all. . . . I think I acted just as clean as anybody. Maybe I acted indiscreet, but I don't think so."

When asked by a member of the committee, "When he (Marlow) testified he bought it, don't you think you should have corrected that in the trial?" respondent said:

"Well, maybe I should have, but I didn't. Of course when you are defending you don't—in a criminal case you don't generally get up and make your client out a perjurer, but I have never denied to a soul I bought that medicine at all."

It is suggested that Marlow may have had two bottles of the cough medicine when testifying; the one

bought and given to him by respondent and one he himself had bought some time before. Marlow's testimony is very unsatisfactory and convinces one that he was trying to evade telling the straightforward truth. If Marlow already had in his possession a bottle of the medicine, there would have been no object in buying another. Its introduction in evidence was for the purpose of showing the jury what he had been taking for his cold and the bottle from which he had been drinking, if he had such, would have been better evidence of that than a similar bottle. We think the two-bottle suggestion was an afterthought, and that respondent believed Marlow swore to an untruth when he said he bought at Minor's Drug Store the one he exhibited at the trial.

Plainly it was respondent's duty, when his client incorrectly and falsely stated that he bought the medicine himself, to endeavor by questions put to him to elicit the correct and truthful answer. This duty he owed to his client, to the court, and to himself. While a lawyer owes the duty to his client of seeing that his rights are fully protected under the forms of the law, he is never justified in imposing upon the court or knowingly permitting his client to do so by testifying falsely. We think that an experienced, right-thinking lawyer, under the circumstances, would have felt impelled to take steps, before his client left the witness-stand or during the trial, to have him correct his testimony. Because respondent did not do so, however, we cannot conclude that his silence was necessarily a studied effort to impose upon the court, or a wilful disregard of the ethical standards of the profession. It was in the midst of the trial and respondent doubtless was taken unawares and did not expect or think that his client would make such a statement. Under such circumstances, the wisest, most experienced lawyer might

hesitate to elicit the real truth for fear of jeopardizing his client's case. There was nothing unethical in respondent's buying the medicine for illustrative purposes in the trial, if done openly and above board. The truth about the purchase of the bottle would have answered as well or better than a lie. There was no reason for the respondent to have incited Marlow to swear falsely, and we do not think he did. The most that can be said is that he remained silent when he should have spoken. We do not think that respondent's conduct in the Marlow case merits his disbarment, suspension, or reproval. We are satisfied if like circumstances ever arise in his practice he will act more ethically and more wisely.

The evidence under accusation No. 5 shows that the respondent was the attorney for Dora Bashore in causes Nos. 6535, 6539 and 6614 in the superior court of Yuma county, entitled, *"Dora Bashore, Plaintiff,* vs. *Harold Lynn Bashore, Defendant,"* all involving the marital relations of the parties.

No. 6535 was a divorce action and was filed April 18, 1929. The complaint, in conformity with the statutory requirements, alleged actual *bona fide* residence of plaintiff in the state for more than one year and in the county of Yuma six months before the commencement of the action. The defendant's answer to the complaint alleged:

" . . . That the plaintiff is not and has not been a resident of Yuma County, Arizona, at any time within a year preceding the filing of the complaint nor prior to the 30th day of January, 1929, when the plaintiff and defendant removed from Bellflower, Los Angeles County, California, to 272 Eighth Avenue, Yuma, Arizona."

Both the complaint and answer were verified before the respondent as a notary public. On April 24, 1929, the complaint, on motion of respondent, was dismissed.

On the same day a complaint in cause No. 6539, for separate maintenance, was filed by plaintiff. The allegation in this complaint as to residence is as follows:

"That the plaintiff and defendant are both inhabitants of this state, and that plaintiff is and for several months last past has been living in the City of Yuma, Yuma County, Arizona."

The answer to this complaint, filed May 17, 1929, among other things, alleged:

"After leaving plaintiff (defendant) the plaintiff filed a suit for divorce against defendant, in which she falsely and fraudulently alleged and made false oath that she had been a resident of the County of Yuma, State of Arizona, which suit was dismissed upon the defendant filing his answer stating the truth of the plaintiff's residence in Arizona of less than three months."

This cause was tried on May 17 and 18, 1929, and on the latter date temporary alimony was denied. On August 6th, on written request of respondent, the clerk of the court dismissed cause No. 6539, and on the same day the complaint in cause No. 6614, for divorce, was filed. Paragraph 1 of this complaint alleged:

"That the plaintiff is and for more than one year next before the commencement of this action has been an actual, continuous and *bona fide* resident of the County of Yuma and the State of Arizona."

The defendant Harold Lynn Bashore, on stationery of the respondent, filed an answer to the complaint in these words:

"Comes now the defendant in the above entitled action and acknowledges service of summons and complaint herein, and waives the time provided by law to answer the same."

Thereafter, plaintiff submitted evidence in support of the allegations of her complaint, and the court granted her a decree of divorce.

In the trial of cause No. 6539, both plaintiff and defendant testified: Defendant, that he and plaintiff were married in Globe, Arizona, June 2, 1926; that they came to Yuma county on January 30, 1929, and separated April 17, 1929; plaintiff, that she and defendant came to Yuma about January 30, 1929; that in April 1927, they moved from Globe to Bellflower, California, where they stayed until they came to Yuma on January 30, 1929; that her father lived in Yuma and she had always claimed her residence with him, because he pretty near took care of her; that her husband never took care of her properly.

It appears that respondent must have known, when he filed the complaint in cause No. 6614, that plaintiff had not been an actual *bona fide* resident of the state for one year or of the county of Yuma for six months before the commencement of the action. One of the first inquiries by a lawyer of a person seeking his services to obtain a divorce is the length and character of the residence of such person in the state and county. If the residence does not meet the requirements of the statute, whatever the grounds of divorce may be, no action may be commenced. This of course every lawyer knows and if he has a proper attitude towards his duty as a lawyer he will refuse to commence or to prosecute a divorce action until legal residence is fully established. Respondent may not have been correctly informed by plaintiff as to her residence when cause No. 6535 was commenced, but when the defendant in that cause by his answer made plaintiff's residence in the state and county an issue, it became and was respondent's duty to investigate the question, and, if plaintiff had misinformed him as to the length of time she had resided in Ari-

zona before the commencement of the action, to dismiss the case. As a matter of fact, cause No. 6535 was, after the issue of residence was raised, dismissed by respondent and immediately another action, in which residence was not jurisdictional, was filed. In this action (No. 6539) for separate maintenance, the complaint alleges that plaintiff and defendant are ''inhabitants,'' indicating that the pleader was familiar with the distinction between resident and inhabitant. Also in this action both plaintiff and defendant testified, or it appears elsewhere in the record, that they moved to Bellflower, California, in 1927, and remained there until January 30, 1929, when they moved to Yuma county, Arizona.

It is suggested by counsel for respondent that it is not shown that Dora Bashore was not a resident of the state and county, within the meaning of the statute, when cause No. 6614 was commenced. We pass that suggestion with a statement of the facts. It is suggested that the decree of divorce in that case was a final adjudication that Dora Bashore had, before the commencement of the action, been a *bona fide* resident of the state for more than one year and of the county of Yuma six months, and that such adjudication may not be collaterally attacked. That may be true as to the Bashores, but it would not prevent the state bar from investigating the conduct of counsel in procuring the adjudication, or this court from punishing counsel by disbarment, suspension, or reproval for misleading the court into believing plaintiff's residence measured up to the statutory requirements when, as a matter of fact, there was no such residence. It may be that respondent, in his anxiety to serve his client, had become persuaded that her residence was that of her parents, who lived in Yuma county. If so, that would not justify his action or conduct. Zeal for

one's client is commendable only when exerted within the law.

While, as stated earlier in this opinion, the recommendation of the board of governors is not within its province and of course not binding upon the court, there is no prohibition against the court considering the board's recommendation. It appears that the board's investigation was most thorough and exhaustive, and at its conclusion its members united in recommending a sixty-day suspension for respondent. We do not know what may have actuated the board to such leniency. It may be it was because of the delay in bringing the charge, some four years, or it may be because the two local judges, Judge INGRAHAM and Judge KELLY, before whom respondent has practiced, testifying before the committee stated that respondent's deportment towards the court had been respectful and his statements to them reliable, and that they had never known any instance where his fidelity to his client had been questioned. Whatever the reason or reasons that impelled the board, after its investigation of the charges against respondent, to suggest a sixty-day suspension, we feel that we should adopt that punishment as the judgment of this court.

It is therefore ordered that respondent, J. Fred Hoover, be, and he is hereby, suspended from the practice of law in Arizona for the period of sixty days from the date of rendition of this judgment.

LOCKWOOD, C. J., and McALISTER, J., concur.