[Civil No. 4096. Filed June 26, 1939.]

[91 Pac. (2d) 865.]

B. C. WILBURN, Appellant, v. L. REITMAN and ELIZABETH REITMAN, Husband and Wife, Appellees.

Mr. J. Fred Hoover, for Appellant.

Mr. R. C. Bennett and Mr. Wm. H. Westover, for Appellees.

ROSS, C. J.—The appellant's assignments of error are in the following words:

"1. The Court erred in rejecting evidence offered by the plaintiff.
"2. The Court erred in refusing to allow the plaintiff to put on his evidence.
"3. The Court erred in instructing a verdict against the plaintiff.
"4. The Court erred in over-ruling the motion for a new trial."

 We have so often refused to accept assignments like these as sufficient to present any question for review that we feel we can make no exception in this case. *Beebe* v. *State,* 49 Ariz. 190, 65 Pac. (2d) 658; *DeMille* v. *State,* 43 Ariz. 551, 33 Pac. (2d) 280; *Hansen* v. *Hansen,* 26 Ariz. 292, 224 Pac. 826; *Wootan* v. *Roten,* 19 Ariz. 235, 168 Pac. 640. We regret this, not because we think there is merit in the appeal but because of the rather novel reasons suggested in the brief of counsel for appellant for his being here. The first sentence of his opening brief is as follows:

"This is an action for damages caused by defendants' failure to perform their part and then ejecting plaintiff from the premises. . . . "

Aside from its poor construction, this sentence has an obscure meaning that no one can fathom without reading the whole record. Subdivision 2 of Rule VII of the Supreme Court provides:

"2. The appellant's opening brief shall contain, in the order herein indicated:

"(a) A concise statement of the ultimate facts of the case as appellant contends them to be proved by the evidence submitted upon the trial, and material to the determination of the issues presented in this court. . . . "

We suppose counsel thought the above a compliance with the rule for in no other place in his brief does he attempt to make "a concise statement of the ultimate facts of the case."

■ Counsel for appellant explains his connection with the appeal as follows:

" . . . after the case was decided in favor of the defendants and the motion for a new trial was overruled these attorneys (attorneys for plaintiff in trial court) stepped out and the writer of this brief, your humble servant (J. Fred Hoover) believing that error has been made has undertaken this appeal, this is done with the consent of former counsel and with abundance of good feeling and admiration for them and my usual admiration and love for his Honor Judge Phelps, the trial Judge."

Whether it was error counsel wanted to have corrected, or a desire on his part to give vent to his feelings toward the court and opposing counsel that caused him to undertake the appeal is, to our minds, a question. It seems that if his purpose was to have errors corrected, he would have prepared proper assignments. He would also have seen to it that the transcript of the evidence was properly signed and approved by the trial judge. The transcript is in the files, but because of the omission to secure its proper approval by the trial judge, we may not consider it. *Hamilton* v. *State,* 17 Ariz. 483, 154 Pac. 1039; *Piper* v. *Taylor,* 17 Ariz. 351, 152 Pac. 863; *Kinney* v. *Neis,* 14 Ariz. 318, 127 Pac. 719; *Shaffer* v. *Territory,* 14 Ariz. 329, 127 Pac. 746. However, to illustrate the

kind of argument counsel makes for a reversal, we quote from that part of his brief headed "Argument" as follows:

"Assignment of error No. 1. Line 25, page 19, Transcript of testimony the plaintiff asked. 'Q. Who drew up this contract, Mr. Wilburn?' Mr. Westover, defense counsel, objected 'as incompetent, irrelevant and immaterial.' The objection was sustained. This testimony is competent. 13 C. J. Sec. 516, Page 544.''

The section of Corpus Juris cited states that when a contract is ambiguous it will be construed most strongly against the party preparing it. There is no contention or suggestion that the information sought by the question would explain any ambiguity in the contract, and if there was none the ruling was correct. Anyway, the so-called error was the peg upon which counsel for appellant hangs the following statement:

"The error might seem immaterial owing to the fact that the verdict was instructed, but it is very material because it reduced the morale of the plaintiff counsel. As a trial lawyer I know that nothing kills the spirit; the morale; the courage; the confidence; the state of mind of a lawyer like a ruling on evidence which makes him wrong when he is right; it takes from him the thought; 'I will win', and replaces it with the thought; 'I will lose', and as a man thinketh so he is and so he does; and another reason, this is one of the times in which Mr. Westover was able to, and did, dominate the court. Mr. Westover tried time and again throughout the trial to completely dominate the court, to control the court by dominant will power and by the power of suggestion.''

It is just too bad if the court's ruling took all the pep, ginger and fire out of the trial counsel, but we have only the word of counsel for appellant that it did. An adverse ruling, to most lawyers, is no deterrent. It is only when the ruling is right and the lawyer is wrong that he blushes and surrenders. We may well

accept counsel's statement of the effect of an adverse ruling upon him, but consider it rather wild speculation to assume the trial counsel were affected in the same way.

The second reason counsel gives as to why the rulings of the court were erroneous, if founded upon facts, raises a most serious question. It is perfectly ethical for an attorney to use logic, oratorical skill, persuasive power and magnetism to gain his point, but according to the accusations of counsel the opposing counsel employed hypnosis to win his case, that is, he put the judge in

"a state resembling normal sleep, differing in being induced by the suggestions and operations of the hypnotizer, with whom the hypnotized subject remains in rapport, responsive to his suggestions." (Webster's New Int. Dict.)

It is true that the law is a social mechanism that grows and expands to keep pace with social progress and needs, but we feel that the practice of hypnotism, at least for the present, should not be permitted in a court of justice. But in this case, if the trial judge was hypnotized, there is nothing to show that the hypnotist used his powers to obtain an erroneous or unjust or illegal ruling. However, if the trial judge is celebrated for one characteristic more than another, it is his independent judicial thought and action and entire freedom from outside influences.

Counsel for appellant, as a parting shot at the trial judge, quotes from Paul's Epistle to the Philippians (chapter 4, verse 8) as follows:

"Finally, brethren, whatsoever things are true, whatsoever things are honest, whatsoever things are just, whatsoever things are lovely, whatsoever things are of good report; if there be any virtue, and if there be any praise, think on these things."

This beautiful alliteration by Paul, like the rest of counsel's argument, has nothing whatever to do with the case.

It might be suggested that we should not have given this matter so much consideration. The state of the record would have justified us in affirming the judgment or dismissing the appeal out of hand and without comment. Under the circumstances, we conclude that counsel for appellant should not, under the privilege of filing a brief to support his client's case in this court, take the opportunity to vilify and abuse the trial court and opposing counsel without a reprimand. This is not his first offense (*In re Hoover*, 46 Ariz. 24, 46 Pac. (2d) 647), but let us hope it will be his last.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.