304 P.2d 1104

Frank LANGLEY and Kathaleen Langley, husband and wife, Plaintiffs-Respondents,

v.

Roy E. DESHAZER and Mable Deshazer, husband and wife, Defendants-Appellants.

No. 8443.

Supreme Court of Idaho.

Dec. 11, 1956.

Rehearing Denied Jan. 9, 1957.

Ryan & Ryan, Weiser, for appellants.

Norris & Welch, Payette, for respondents.

ANDERSON, Justice.

This is an action to have a private driveway declared a private nuisance and to have it abated so as to allow water backed up on plaintiffs' (respondents') lands from defendants' (appellants') pumping pond to drain away. Plaintiffs asked damages in the sum of $3,000. Defendants maintain that they have acquired an easement by prescriptive right to maintain the private driveway to use as a levee to raise the water level for pumping purposes.

The parties to this action are adjoining landowners. The lands of the defendants lie westerly from those of the plaintiffs, and are separated therefrom by the county highway and also the right of way of the Union Pacific Railroad. The lands of both the plaintiffs and the defendants have a general slope downward from east to west,

and there is a natural drain that runs westerly underneath the highway and railroad, and crosses the southern portion of defendants' lands in a westerly direction. This natural drain is sufficient to carry all surface run-off water and waste irrigation water from plaintiffs' property, and would do so if it were not for the obstruction defendants have placed across the drain in the nature of a private driveway.

The defendants purchased and have been in possession of their lands since 1938, and contend that they have maintained the irrigation diversion work since April, 1944. The plaintiffs have owned and have been in possession of their lands since 1947. They contend that in July, 1952, the private driveway was raised to the height of approximately three feet above the bottom or lowest part of the natural drain. In 1954, an irrigation ditch bank broke and flooded plaintiffs' land. Shortly thereafter, defendants placed a 10-inch culvert in their private roadway to drain off the flood water, but the culvert was not so low as the bottom of the natural drain, and did not carry off all the accumulated water. When the pond is raised to pumping level, water backs up across approximately six and eight-tenths acres of pasture land owned by the plaintiffs.

The evidence of the plaintiffs and of the defendants is in direct conflict on the question of the length of time plaintiffs' lands have been flooded, and on the question of whether there was any culvert under defendants' road prior to 1954.

Both Mr. and Mrs. Langley testified the water backed up by defendants' levee first flooded their pasture lands in 1952. Defendants contend that the flooding occurred over a period of more than five years, and that they therefore had obtained a prescriptive right to flood plaintiffs' lands. They maintain the levee has been unchanged for approximately 12 years, except for graveling of the roadway in 1947, raising it three inches in 1948 or 1949, and the installation of the culvert to drain off flood waters in 1954. There is evidence, however, of the existence of another culvert under the levee, one witness having stated that in 1943 his tractor broke through the surface of the road and exposed a culvert built of one-inch boards.

Defendants' son, who rented and operated defendants' farm, said it was not until 1954 that he found the pumping pond was flooding plaintiffs' property, and that the flooding was unintentional.

The principal question involved is whether or not defendants have acquired a prescriptive right to maintain their roadway, levee and dike in its present condition, and thereby to flood plaintiffs' land. The trial court found that the defendants had not acquired such a right, and entered judgment accordingly, requiring defendants to abate the nuisance by installing a 24-inch

culvert under their roadway, and assessing damages of $1,500 in favor of the plaintiffs. This appeal is taken from the judgment.

It appears the parties have proceeded on the assumption that in a case such as this, one may by open, notorious, and adverse use for a period of five years obtain a prescriptive right to flood another's land periodically. It is unnecessary to decide this question, and we do not decide it, since the trial court's finding was that such flooding had occurred only since 1952—three years before this action was filed—and thus short of the time required to acquire a prescriptive right if one could be obtained in a case of this nature. See Lavin v. Panhandle Lumber Co., Ltd., 51 Idaho 1, 1 P.2d 186.

■ It is the function of the trial court to find the ultimate facts from conflicting evidence, and if the trial court's findings are sustained by competent, substantial, though conflicting, evidence, such findings will not be disturbed on appeal. Fogelstrom v. Murphy, 70 Idaho 488, 222 P.2d 1080. However, if the trial court should find the ultimate facts contrary to uncontroverted and non-conflicting evidence, then such findings are reversible on appeal. Here, there is competent, substantial evidence to sustain the findings of the trial court as to when the flooding began, and such findings will not be disturbed on appeal. Idaho Code, § 13–219; Holland v. Beames, 71 Idaho 343, 231 P.2d 741; Yearsley v. City of Pocatello, 71 Idaho 347, 231 P.2d 743; Driesbach v. Lynch, 71 Idaho 501, 234 P.2d 446; Gerlach v. Schultz, 72 Idaho 507, 244 P.2d 1095; Smith v. Cooper, 73 Idaho 99, 245 P.2d 816; Ontario Wood Products Co. v. Stoltenberg, 77 Idaho 443, 294 P.2d 270.

■ Plaintiffs offered evidence to show that the inundated land had become overgrown with tules and water grasses, that the flooding had raised the water table elsewhere on their lands, that the sink drain from their house would not function properly, that the standing water had become a breeding place for mosquitoes and other insects, that plaintiffs' dairy cows had to walk through mud and high water, so that extra effort was required to keep them clean, and that the stagnant water caused a foul odor. A real estate broker, testifying for plaintiffs, described the flooded land as "worthless" and said the flooding had reduced the sale value of plaintiffs' farm by $1,500 to $1,600. Defendants offered no evidence in mitigation of damages, and nothing as to the kind and extent thereof.

In setting the amount of damages, the trial judge treated the injury as permanent. He stated:

"That as a direct result of the placing of said obstruction * * * and

thus causing said waters to be backed up upon and across plaintiffs' said lands thus causing portions of plaintiffs' lands to be waterlogged; and that said lands of the plaintiffs were thereby depreciated in value to the extent of $1,500.-00 * * *."

Inasmuch as the defendants did not offer evidence of the feasibility and the cost of restoring the flooded land to productivity, this holding was correct. The Supreme Court of California, in the case of Perkins v. Blauth, 163 Cal. 782, 127 P. 50, 54, stated:

"* * * it was not error to instruct the jury that the difference in the market value of the land before and after the damage was the measure of defendants' liability. If, as appellants contend, there was no permanent injury to the land, or if the land could have been cleared of its sand and cured of its other injuries, and if respondent could have been reimbursed for all his losses for an amount much less than the damages awarded, it would have been permissible for appellants, in mitigation of the damages claimed by plaintiff, so to have established by evidence. They did not undertake to do so, or at least did not do so to the satisfaction of the jury, and appellants are therefore in no position here to complain."

In Le Brun v. Richards, 210 Cal. 308, 291 P. 825 at page 829, 72 A.L.R. 336, the court stated relative to the measure of damages for flooding:

"* * * the correct rule is that the measure of damages for injuries to real property is the difference, if any, in its market value before and immediately after the injury. * *"

See also 56 Am.Jur., Waters, sec. 441, p. 856, and Boise Valley Construction Co. v. Kroeger, 17 Idaho 384, 105 P. 1070, 28 L.R.A.,N.S., 968.

The Lavin case, supra, is distinguishable as to the question of damages in that it involved damage to a bathing beach; as soon as the water level dropped, the beach would again become usable, and the injury was thus only temporary. The present case, on the other hand, involves the loss of productivity of farm land.

We find no reversible error. The judgment is affirmed.

Costs to respondents.

TAYLOR, C. J., and KEETON, PORTER and SMITH, JJ., concur.