(No. 6411.  May 14, 1937.)

ADDISON T. SMITH and MARY A. SMITH, Husband and Wife, Appellants, v. WARREN G. SWENDSEN, Otherwise Known as W. G. SWENDSEN, and BIRDIE SWENDSEN, Husband and Wife, Respondents.

[69 Pac. (2d) 131.]

Harry Benoit and John W. Graham, for Appellants.

Karl Paine and Edwin Snow, for Respondents.

GIVENS, J.—October, 1931, appellants owed R. C. Little a balance of $29,500 on a purchase price first mortgage on an apartment house; a second mortgage of $10,000 originally given to Sudler, Epperson, Grubb & Company assigned to appellant W. G. Swendsen November 8, 1930; and a third mortgage due Hugh F. Smith in the sum of $3,500. Appellants were delinquent in payments of principal and interest on the first mortgage and feared foreclosure thereof. After unsuccessful attempts to refinance by securing a loan sufficient to take up all the outstanding indebtedness, and after a series of negotiations between appellants and respondents, apparently for years close and intimate friends, appellants deeded the property in question to respondents on October 8, 1931, and entered into an agreement the same day, contended by respondents to give appellants solely an option to repurchase the property within 15 months, declared by appellants to constitute, together with the negotiations leading up to the signing of the agreement, a mortgage, and this action was instituted February 1, 1935, to have the same so declared by the trial court, which found in favor of respondents, hence this appeal.

The assignment of error which we deem determinative of this appeal is based upon the action of the trial court in sus-

taining respondents' objections to all appellants' evidence of the negotiations preceding the signing of the agreement, submitted to show the deed and agreement constituted a mortgage and not an absolute conveyance and option for repurchase.

Respondents admit the general rule that parol evidence is admissible to show a deed absolute on its face is a mortgage (sec. 44–805, I. C. A.), but contend the trial court correctly ruled because of an asserted exception that where the parties have declared their intention and purpose in clear unequivocal writing that the transaction is an option to repurchase or a sale absolute and not a mortgage, parol evidence is not admissible, citing *Milner v. Earl Fruit Co.,* 40 Ida. 339, 232 Pac. 581; Wigmore on Evidence, second edition, volume 5, section 2437, page 321; *Thomas v. Scutt,* 127 N. Y. 133, 27 N. E. 961; *Marsh v. McNair,* 99 N. Y. 174, 1 N. E. 660; *Miller v. Carpenter,* 68 App. Div. 346, 74 N. Y. Supp. 231; *Carter v. Simpson Estate Co.,* 103 Or. 383, 193 Pac. 913, 203 Pac. 580; *Thomas v. Ogden State Bank,* 80 Utah, 138, 13 Pac. (2d) 636; *Pindar v. Resolute Fire Ins. Co.,* 47 N. Y. 114, 117; *Gerton Carriage Co. v. Richardson,* 6 Misc. 466, 27 N. Y. Supp. 625; *Peugh v. Davis,* 96 U. S. 332, 24 L. ed. 775.)

The exception however does not prevail if the writing is ambiguous or uncertain. (41 C. J. 353, sec. 118; *Shelp v. Decker,* (Tex. Civ. App.) 262 S. W. 807; and respondents' authorities virtually so hold.

*McMurry v. Mercer,* (Tex. Civ. App.) 73 S. W. (2d) 1087, announces the rule contended for by respondents:

" . . . . The notes executed by Mercer, payable to Clarence and Sam McMurry, representing the unpaid consideration, and the option agreement executed at the same time, obligating Mercer to reconvey on terms specified, constituted parts of the consideration for the conveyances, are contractual in nature, unambiguous in terms, not attributable to either fraud, accident, or mistake, clearly evidencing the intention of the parties, and cannot, in our opinion, be varied, contradicted, or added to by parol evidence. . . . . "

though the court nevertheless considered the circumstances and negotiations leading up to the signing of the option agree-

ment and held the evidence was not sufficiently clear, satisfactory and convincing that the parties intended a mortgage, and Texas has held if there is doubt as to the meaning of the instrument (option or defeasance) parol evidence is admissible. (*Johns v. Hilburn,* (Tex. Civ. App.) 64 S. W. (2d) 1009; *Wells v. Hilburn,* (Tex. Civ. App.) 98 S. W. (2d) 177.) (Apparently Illinois is at the other extreme holding that if the instrument leaves it doubtful it will be construed a mortgage. *Graham v. Mullins,* 286 Ill. App. 393, 3 N. E. (2d) 723.)

We will therefore proceed to examine the agreement to see if it is uncertain in material respects, that is, as to whether it indicated with certainty that appellants were granted only the right to repurchase and that the agreement clearly did not constitute a mortgage. The material parts of the agreement are as follows:

" . . . . The condition of this option is that, in order to exercise it, the buyers shall pay to the owners in cash, at the time of the exercise thereof, the following:

"(1) The principal sum of the second mortgage now on said premises, together with all interest accruing thereon, at the rate therein specified, from the date of the last interest payment to the date of the exercise of the option.

"(2) Any and all amounts that may have been paid by the owners upon the first mortgage against said premises, together with interest thereon at the rate of eight per cent per annum from the date of said payments.

"(3) Any and all amounts that may be paid by the owners upon taxes, insurance, repairs, and/or the amount of any operating deficit incurred subsequent to the date of this agreement, with interest on all such payments and/or expenses from the date thereof, at the rate of eight per cent per annum.

"It is mutually agreed that the owners shall keep an account of the income from and expenses of the said Reed Apartments, and that any net amounts of income remaining after the payment of taxes, insurance, repairs and operating expenses, shall be credited upon the amounts herein provided to be paid by the buyers in order to exercise this option, if and when they do exercise it; that is, that upon the exercise of the option, the buyers shall pay the amounts hereinabove

provided for, less any credits that may be due thereon from the net operating income, if any, computed as above set forth; it being provided, however, that in the event this option is not exercised, that such net operating income, if any, shall be and remain the property of the owners.

"It is mutually agreed that the buyers shall cause the third mortgage now on the premises hereinabove described to be released and discharged of record, as a condition precedent to this option taking effect.

"It is further mutually understood and agreed that the buyers shall pay to the owners the sum of Four Hundred Dollars ($400.00) on or before November 6, 1931, that being the interest up to that date on the second mortgage now on said premises.

"It is further mutually agreed that the owners shall keep an accurate account of any and all payments made on the premises, and of the operating income and expenses of said property, and shall furnish the buyers a statement of the amount required to exercise this option, together with a copy of the accounts pertinent thereto, at any time the buyers may request during the life of this agreement.

. . . . . . . . . . .

" (6) The circumstances and conditions under which this agreement is made are as follows, and not otherwise:

"W. G. Swendsen, one of the first parties hereto, is the owner of a second mortgage given by second parties upon the property and premises herein described, which mortgage is recorded in Book 102 of Mortgages, page 90, records of Twin Falls County, Idaho; that there is also a first mortgage upon said property and premises given by the second parties hereto, which first mortgage is recorded in Book 94 of Mortgages, page 560, records of said county; that certain payments of principal and interest on said first mortgage are about to become due on October 10, 1931, and said second parties hereto are about to make default in such payments, which default would necessitate the foreclosure of said first mortgage and said second mortgage with consequent large expenses and attorney's fees; that under these circumstances, said W. G. Swendsen has conditionally accepted from second parties a warranty deed and bill of sale to said property and

premises of even date herewith, in satisfaction of the debt evidenced by said second mortgage; that said second parties, the grantors in said deed, have represented to said Swendsen that the value of said property is probably not in excess of the amount of said first and second mortgage liens; that said Swendsen has accepted said deed and bill of sale in satisfaction of said second mortgage debt only upon the following conditions:

''(2) That second parties pay the interest on said second mortgage debt up to November 6, 1931, as specified in paragraph 3 hereof;

''(b) That the second parties will procure the release of said third mortgage on said property hereinbefore referred to, which third mortgage is in the amount of $3500.00, and is recorded in Book 103 of Mortgages, page 26, records of Twin Falls County, Idaho, as said second parties have herein promised and agreed to do.

''Upon the performance of said conditions, said W. G. Swendsen will release of record said second mortgage and the debt secured thereby; but failing the performance of said conditions, and each of them, by second parties within thirty days from the date hereof, the deed and bill of sale aforesaid conditionally accepted by said Swendsen may at the latter's option be deemed inoperative, and in that event first parties hereto will forthwith quitclaim said premises and property to second parties hereto, and this agreement shall be void; whereupon said W. G. Swendsen may fully rely upon his said second mortgage as security not only for the debt evidenced by the promissory note therein described and the interest thereon, but also as security for any sums he may at his election hereafter advance in payment upon said first mortgage, together with interest at eight per cent per annum from date of any such advances; and second parties hereby expressly agree that under such circumstances said second mortgage may so stand as security.

''The filing for record by said Swendsen of release of said second mortgage shall be and shall be deemed conclusive evidence of the compliance by second parties with the conditions aforesaid, and thereafter the acceptance by said Swendsen of said deed and bill of sale from second parties shall

be deemed absolute conveyances, and in full satisfaction of any and all indebtedness due him from said second parties, and shall not be deemed in any manner security for any debt.

"It is especially understood and agreed that the option for the repurchase of said premises and property herein given to second parties in no manner imposes upon them any obligation to exercise the same, or evidences any debt whatsoever.

· "(7) Second parties agree that first parties may, without expense to them, have the benefit of any prepayment of premiums upon all existing fire insurance policies covering said property, and that (subject to the rights of said first mortgagee) any losses that may become payable thereon shall be paid to first parties."

The agreement evidently provided that until payment of the $400 interest on the second mortgage and the liquidation or release of the third mortgage, the transfer did not become absolute, which is the entrance to the field of uncertainty existing in the agreement itself. In the first place the agreement states that under the circumstances detailed in the agreement respondent "W. G. Swendsen has *conditionally* (emphasis ours) accepted from second parties a warranty deed and bill of sale to said property and premises of even date herewith, in satisfaction of the debt evidenced by said second mortgage"; and

" . . . . The filing for record by said Swendsen of release of said second mortgage shall be and shall be deemed conclusive evidence of the compliance by second parties with the conditions aforesaid, and thereafter the acceptance by said Swendsen of said deed and bill of sale from second parties shall be deemed absolute conveyances, and in full satisfaction of any and all indebtedness due him from said second parties, and shall not be deemed in any manner security for any debt.

"It is especially understood and agreed that the option for the repurchase of said premises and property herein given to second parties in no manner imposes upon them any obligation to exercise the same, or evidences any debt whatsoever."

Did the paragraphs mean that up till the filing for record of the release, appellants retained some rights not defined,

or that it lay solely within respondents' power to decide and declare by the filing of the satisfaction when appellants' retained rights, whatever they were, would be cut off? What was the purpose in implying if not making a distinction between "evidence" and "deemed conclusive evidence"? Furthermore does it mean that *thereafter* Swendsen was to physically accept the deed, or that through previous physical delivery of the deed, it was thereafter to be deemed legally accepted, but not so prior thereto? Certainly, at least, one if not the only construction to be placed on the paragraph is that until the filing of the release the indebtedness due, either on the first or second mortgage, or both, was not satisfied, and that it was only after that, i. e., filing the release for record, that no security for a debt continued to exist or obligation remain on appellants. The release of the second mortgage was not signed until November 9, 1935, and was only tendered for record and handed to the clerk of the trial court during the trial of this action November 13, 1935. It is argued by respondents that since the note was returned April 11, 1932, the debt and mortgage are eliminated and since appellants had not asked that the release be filed the incident is of no moment.

This argument however recognizes two constructions of the provisions of the instrument under consideration are possible, because while conceding that delivery of the note canceled the indebtedness, by the terms of the agreement as written, the recording of the release of satisfaction showed final acceptance by Swendsen of the deed as payment of the indebtedness due from appellants. If the agreement constituted a mortgage or security for the payment of the first and second mortgage and obligations in connection therewith, prior to the performance of the respective conditions precedent or subsequent, when did it cease to be a mortgage and the transfer become absolute?

Respondents argue that:

" . . . . However, it is our contention that when plaintiffs performed the conditions on their part the second mortgage indebtedness was satisfied, the deed and bill of sale became absolute, and the option to purchase came into effect all at the same instant. . . . . "

Unfortunately for respondents that is not, as repeatedly pointed out, what the agreement says.

Respondents in their answer specifically alleged the two paragraphs under discussion as proving it was the intention of the parties that the agreement did not constitute a mortgage and alleged that ever since the 6th day of November, 1931, which is the asserted effective date of said deed, they are now and have been the owners in fee simple of the said premises. The court however concluded that not until November 11, 1931, did respondents become the owners of the property. The check in payment of the $400 interest on the second mortgage was mailed November 6, 1931. The release of the third mortgage was dated October 1, 1931; recorded October 13, 1931. As noted above the agreement itself recites the deed from appellants to respondents was accepted conditionally and further provides that upon the performance of the two enumerated conditions respondent W. G. Swendsen would release the second mortgage of record and the debt secured thereby, and the further provision that *"thereafter"* (emphasis ours), which must refer to the recording of the release of the second mortgage, "the acceptance by said Swendsen of said deed and bill of sale from second parties shall be deemed absolute conveyances, and in full satisfaction of any and all indebtedness due him from said second parties, and shall not be deemed in any manner security for any debt."

If as argued by respondents the purpose of filing the release was for the benefit of third parties who might purchase the property who would be advised by the agreement that after the recording of the release, title stood conclusively in respondents, nevertheless the construction of the agreement making it determinative of appellants' and respondents' rights is as plausible as respondents' because the agreement was recorded April 2, 1934, and under respondents' reasoning until the tendering of the release in open court on November 13, 1935, the purchaser would at least have been uncertain from the language of the two above paragraphs, as to who owned the property and what indebtedness had been satisfied, because if prior to the recording of the release, respondents had not accepted the deed and bill of sale in satisfaction of

any and all indebtedness due them from appellants, the agreement was still security for the payment of the debt and in conflict with the later provision that the option for repurchase imposed no obligation or debt upon appellants. Respondents argue there is no conflict if their theory be adopted, but that is to ignore the plain statements in the agreement. The transaction could not simultaneously constitute a mortgage and absolute transfer, and it is evident that for some period the agreement was security for the performance of certain obligations and the continuance, as to respondents, of at least the indebtedness of the second mortgage, and if we give effect to respondents' contention that thereafter and at some time the transaction ripened into a complete transfer and absolute title and lost all efficacy as mere security, the date when such transmutation took place is important.

Appellants in effect say it is immaterial when title ripened in respondents, because ultimately, after the payment by appellants of the $400 and the third mortgage and failure to exercise the option within 15 months, it would be bound to do so. If, however, the *recording* of the release and satisfaction of the second mortgage was the final date of transfer, the paragraph at least created an ambiguity between this recital and the other part of the agreement which fixed 15 months from the date thereof as the time within which appellants might repurchase. If the agreement was security until respondents had signified their acceptance of the transfer by the filing of the release for record it was security when this suit was filed February 1, 1935, and so continued until the trial.

The incident which the agreement itself fixed as indicating acceptance by respondents was not the release of the debt but the recording of the satisfaction of the second mortgage, and that the court fixed November 11th as the date of the absolute passing of title merely emphasizes the uncertainty and ambiguity of the agreement, because the date of the deed is October 8, 1931, and 30 days from then would be November 8th. Respondents argue that under certain contingencies it would be apparent that appellants would not desire this transaction to be construed as a mortgage because of foreclosure against them with possible deficiency. By the same

token, under other circumstances, could not respondents urge that until they filed the release of the second mortgage they had not finally accepted the deed as an absolute conveyance and an absolute satisfaction of all indebtedness due them; as respondents urge the rule should work both ways. (*Chase Nat. Bank of City of New York v. Tover,* 245 App. Div. 615, 283 N. Y. Supp. 832.)

The above analysis indicates enough uncertainty and ambiguity in the instrument itself to render inapplicable the exception contended for by respondents, and it follows that the trial court erred in sustaining the objections to testimony offered by appellants of the negotiations prior to the agreement. Since the cause must be remanded for the purpose of having the trial court consider the evidence thus previously excluded, we will not comment further upon the findings of fact challenged as erroneous, or the evidence, merely reaffirming the incidents essential for determining whether a transaction is a deed absolute with option to repurchase or a mortgage, announced in *Dickens v. Heston,* 53 Ida. 91, 21 Pac. (2d) 905, 90 A. L. R. 944.

The judgment is reversed and the cause remanded for the purpose of having the trial court consider the evidence stricken by the sustaining of respondents' objections thereto, make findings of fact and conclusions of law and decree accordingly, allowing either party to present further evidence if they so desire. Costs awarded to appellants.

Morgan, C. J., Holden and Ailshie, JJ., concur.

Petition for rehearing denied.