233 P.2d 802

STATE v. SNYDER.

No. 7734.

Supreme Court of Idaho.

July 5, 1951.

Samuel F. Swayne, Ray McNichols, Orofino, for appellant.

Robert E. Smylie, Atty. Gen., William H. Bakes, Asst. Atty. Gen., Warren F. Gardner, Prosecuting Atty., Orofino, for respondent.

THOMAS, Justice.

The appellant was convicted of selling mortgaged personal property exceeding the value of $60 and sentenced to serve a term of not to exceed fourteen years in the State Penitentiary.

In the spring of 1946 the appellant, a married man with limited education and business experience, purchased an old combine harvester; the purchase in part was financed through a loan with Robinson Loan Company secured by chattel mortgage on the harvester; the mortgage was recorded in the office of the County Recorder of Clearwater County; the following spring appellant gave a mortgage on all of his livestock and machinery to Farmers' Home Administration, hereinafter referred to as FHA; this mortgage contained an after-acquired property clause, and it was also recorded in the office of the said County Recorder of Clearwater County.

In the fall of 1947 appellant being delinquent in his payments to Robinson Loan Company, was being pressed for payment; he approached one Emon Olson, seeking money with which to pay off the Robinson loan which at that time was approximately $180.

Appellant, Olson, and Mr. Patterson, manager of Robinson Loan Company, met at the garage of Olson in Orofino, Idaho, where the transaction with reference to the financing of the Robinson loan was consummated. At that time Olson paid directly to Patterson the $180 debt owing by appellant to Robinson Loan Company; there was no other money changed hands; at that time Olson himself prepared an instrument which on its face purports to

be a bill of sale covering the harvester, and appellant executed it; Olson had never seen the harvester prior to this time nor did he at any time thereafter take it into possession.

Early in March, 1948 the FHA foreclosed its mortgage and the harvester, with all the other property covered by the mortgage was sold at Sheriff's sale; Olson had notice of these proceedings, and while he advised the Sheriff that he owned the harvester, he did nothing further about it.

Either in the month of March 1948 or March 1949, the evidence being uncertain, appellant's wife made two monthly payments of $10 each to Olson, who gave her on each occasion receipt therefor.

The crucial question conceded by both the State and appellant is whether or not the instrument which on its face purports to be a bill of sale was in fact and in law an absolute transfer of title, or merely a device to secure a debt. If it is a mortgage or any form of security device the State failed to prove a sale as charged in the information, and the conviction cannot be sustained.

Section 45–901, Idaho Code, defines a mortgage as follows: "Mortgage is a contract by which specific property is hypothecated for the performance of an act without the necessity of a change of possession."

Sections 45–904, Idaho Code, and 45–905, Idaho Code, provide as follows:

"45–904. Every transfer of an interest in property other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by an actual change of possession, in which case it is to be deemed a pledge."

"45–905. The fact that a transfer was made subject to defeasance on a condition, may, for the purpose of showing such transfer to be a mortgage, be proved (except as against a subsequent purchaser or encumbrancer for value and without notice), though the fact does not appear by the terms of the instrument."

Olson, who was the complaining witness, testified under direct examination with reference to the transaction between himself and appellant as follows:

"Q. What was the nature of that? A. Well, he owned a combine, or said he had, and a party had a mortgage on it in Lewiston and he wanted to make a deal with me so he could pay off that mortgage",
and under cross-examination he testified as follows:

"Q. And just what was the nature of the deal you made with Leonard? A. The balance was due or past due and he said he had to do something so he wanted to sell me the combine and I wasn't very anxious about it and he talked me into it and he said if I didn't want it he would buy it back.

458

"Q. And you put up this $180 to pay off Mr. Patterson? A. Yes.

"Q. Has Mr. Snyder made any payments on that? A. He made me two $10 payments.

"Q. You gave a receipt? A. Yes.

"Q. Showing a balance of $170 and $160? A. Yes, to apply on the contract.

"Q. He was to pay you interest on that was he not? A. Yes, we didn't have any contract. It was just an agreement. It was still mine if he didn't.

"Q. He was to pay eight percent interest on the contract? A. Yes.

"Q. It is a fact that he was to pay back monthly payments and eventually pay you eight percent interest? A. I don't know."

After objection to the above question was overruled the question was again stated, and Olson answered as follows:

"A. I would not say that.

"Q. What did you say? A. I don't remember the agreement as to what the interest was. He was supposed to give me back my money.

"Q. Have you ever made demand on Mr. Snyder for your money? A. I have, yes.

"Q. Has he ever tendered to you the amount due on this loan either personally or through his father? A. Two payments, I believe. His wife gave them to me.

"Q. Now Mr. Olson can you tell us whether or not this bill of sale, or security you had, was made out at the time Mr. Patterson was there or was that made out subsequently? A. At that time.

". Q You agreed to loan Leonard money? A. I was just going to buy it from him and pay off the mortgage and he would be clear. I told him if he wanted it he could buy it back. We didn't have any agreement.

"Q. Did he make these two payments? A. Yes, there were supposed to be more than that.

"Q. How much is supposed to be due Mr. Olson? A. I think he was supposed to pay $50 or $60 a month; I wouldn't say for sure.

"Q. He only made two $10 payments? A. That's right.

"Q. And at this time he owes you the balance? A. If he wanted the separator, I figure he owes it to me.

"Q. He was supposed to make payments of $50 or $60 a month? A. That is, verbally.

"Q. Was Mr. Snyder to pay interest each month or was it to be carried forward to the last of the transaction? A. I don't remember whether interest was mentioned or not. He was just to pay the money back I paid in.

"Q. You are quite sure he agreed to pay you back? A. If he wanted to buy

it back. Naturally I wanted my money back and make him clear with the Finance Company."

The appellant testified in substance to the effect that he had gotten behind in his payments to Robinson Loan Company and that they were about to take his machine away, so he went down to Mr. Olson and told him about it and stated that he didn't want to lose his machine and asked Olson if he would refinance the matter and that he could repay him and in that manner would not lose his combine. Appellant further testified that he was to pay the money back to Mr. Olson on a monthly basis which, as he recalled, was somewhere around $40 or $50 per month with interest at the rate of eight percent.

Mr. Patterson, who was present at the time the transaction was consummated, testified that there was a conversation between the appellant and Olson relative to the repayment of the money but that he was unable at the time of the trial to recall the details or terms agreed upon, but that he was positive there was a conversation about the debt to be repaid.

■ The question whether or not an instrument such as a deed or bill of sale absolute in form and an agreement of reconveyance or retransfer together constitute a mortgage depends upon the intention of the parties at the time of the consummation of the transaction. Such intention may be gathered from the instruments themselves and from extrinsic evidence of former and subsequent acts and declarations of the parties which in any wise throw light upon such intention and the real character of the transaction; the instrument itself is not conclusive in this respect. It may be that one or several elements or factors become of controlling importance in such determination. 155 A.L.R. 1104.

■ A bill of sale, absolute on its face, may be construed to be a chattel mortgage. Deichert v. Euerby, 54 Idaho 14, 27 P.2d 981; Schleiff v. McDonald, 45 Idaho 620, 264 P. 866.

■ In determining whether such an instrument constitutes a mortgage, certain essential circumstances must be considered; the controlling test to be applied in such determination is whether or not there was a subsisting debt after the conveyance.

Again, the nature of the transaction is tested on the basis of whether or not at the time of the execution of the instrument the grantor or transferor sustains the relation of debtor to the grantee or transferee; where the grantor or transferor retains possession that is also indicative that a mortgage was intended; it is also proper to take into consideration the previous negotiations of the parties, their agreements and conversations and the general course of the dealings between them prior to and leading up to the instrument in question.

Another element which aids in determination as to the nature of the instrument

is inadequacy of the price, that is, if the price is not fairly proportionate to the value of the property it would strongly indicate that a sale was not intended but that the transaction was treated as a mortgage; again, if the grantor or transferor is in financial difficulty and is severely pressed for money at the time of the transfer, thereby not being able to exercise the freedom of choice as to the disposition of his property and was able to secure the money needed only by conveying his property with the right of repurchase, that also tends to indicate that a mortgage was intended; of course the intention of the parties gathered from all the surrounding facts and circumstances as of the time of the transaction is of material importance. Dickens v. Heston, 53 Idaho 91, 21 P.2d 905, 90 A.L.R. 944; see also Gray v. Fraser, 63 Idaho 552, 123 P.2d 711; Smith v. Swendsen, 57 Idaho 715, 60 P.2d 131, 111 A.L.R. 441; Fond v. McCreery, 55 Idaho 144, 39 P.2d 766; Investors' Mtg. Sec. Co., Ltd., v. Hamilton; 51 Idaho 113, 4 P.2d 347; Clinton v. Utah Construction Co., 40 Idaho 659, 237 P. 427.

The evidence hereinabove related conclusively reveals that at the time of the execution of the bill of sale a debt was created; again the retention of possession of the property by the appellant, while not of controlling importance, is entitled to some weight; all the negotiations leading up to the transaction which has been related tend to indicate that the parties intended that the bill of sale was given as security and not for the purpose of passing absolute title.

While there is no evidence in the record as to the actual or fair market value of the harvester, it is of importance to note that Mr. Olson paid to the mortgagee the amount then past due and owing and did not part with any further funds; in other words if it was a purchase he was purchasing the property for a consideration equal to the mortgage indebtedness and no more; there would be no purpose on the part of appellant to be interested in any such a transaction, as it would not in any wise improve his condition and he could not expect to save the combine for himself by selling it to Olson; he did testify he wanted to save his combine.

■ The record clearly reveals that appellant was in financial distress and was not in a position to exercise perfectly a freedom of choice as to how the transaction should be handled; be that as it may, the testimony of the complaining witness himself established that by the repayment of the $180 with interest, appellant should have the property, and when all of these elements and aspects are carefully considered and weighed it indicates that it was the intention of the parties at the time of the consummation of the transaction that the bill of sale was executed and delivered not as a conveyance of absolute title but as a form or device of security for a loan.

■ The evidence entirely failed to establish a sale of mortgaged property as

charged in the information and on the other hand effectively established a mortgage of the property.

 The evidence being insufficient to support the verdict and the verdict being contrary to law, the verdict and judgment of conviction should be set aside. State v. Sullivan, 34 Idaho 68, 69, 199 P. 647, 17 A.L.R. 902; State v. Bates, 63 Idaho 119, 117 P.2d 281.

The judgment is reversed with instructions to the trial court to dismiss the information and discharge the appellant.

GIVENS, C. J., and PORTER, TAYLOR and KEETON, JJ., concur.