554 P.2d 684

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Gary Paul WARDEN, Defendant-Appellant.**

**No. 11907.**

Supreme Court of Idaho.

Sept. 21, 1976.

William H. Foster, Grangeville, for appellant.

Wayne L. Kidwell, Atty. Gen., Rudolf D. Barchas, Deputy Atty. Gen., Boise, for respondent.

PER CURIAM.

This is an appeal from a judgment of conviction of possession of a controlled substance (marijuana). Although the principal issue posited on appeal by both appellant and respondent was the admission of certain evidence resulting from an allegedly illegal search and seizure, we do not reach that issue. Appellant also argues the insufficiency of the evidence to sustain the conviction. We agree and therefore reverse.

Since our holding is based upon the insufficiency of the evidence to sustain conviction, the evidence must be reviewed at some length. Defendant-appellant Warden was arrested together with five other persons while in a house trailer on December 8, 1973. The arrest took place at approximately 2 a. m. by law enforcement officers acting primarily upon information supplied by one Blankenship. The trailer was owned by Blankenship. The circumstances surrounding Warden's occupation of the trailer are less than clear in the record. During the ten days or two weeks preceding the arrest, Warden and his brother

along with other persons occupied the trailer to the extent that they slept there at nights. At least two or three other persons also occupied the trailer during the two weeks prior to the arrest. Blankenship had given permission to Warden and the others to so use the trailer but he charged them no rent and did not consider that they had any ownership or tenancy in the trailer.

On the night in question Warden and numbers of other persons including his codefendants were circulating from one bar to another in downtown Grangeville. Evidently, Blankenship was a member of that group and the evidence strongly suggests that Blankenship during the course of the evening invited a large number of people to attend a card and beer drinking party at the trailer in question. Some persons had been at the trailer during the earlier hours of the evening, but the large influx of persons to the trailer took place shortly after 1 o'clock a. m. upon the closure of the bars. Between 1 and 2 a. m. numbers of people arrived at the trailer, remained for varying times and some left prior to the arrest at 2 a. m. As noted by the magistrate at the preliminary hearing, "the whole town was invited." While estimates varied, it was stated that at one time there were 18–20 people in the trailer. It is clear that at the time of the arrest there were 10–12 people in the trailer. The versions of who was there and what went on in the trailer house are dependent on the admitted degree of intoxication of the individual witnesses. Some had become ill, some were asleep and some were so intoxicated they could not remain upright.

While the record is not clear as to how long Blankenship was at the "party," at some point between 1 and 2 a. m. he believed that he detected the odor of marijuana, left the party, and called the police. When the police arrived at the scene, they met Blankenship outside the trailer and then entered it. Upon entry they observed five or six people in the living room and kitchen areas of the trailer which were described as extremely messy with cigarette butts and beer bottles strewn about. The odor of marijuana was detected and appeared to be emanating from a back bedroom. The officers proceeded to that back bedroom and found six people therein either sitting on the floor or lying or sitting upon the bed. The room was lighted only by a small, dim, blue lightbulb. Different versions of the events are told as to whether the occupants of the bedroom were then placed under arrest, but in any event they were searched for weapons and removed from the bedroom and subsequently taken to the police station in Grangeville. There they were charged with frequenting a place where a controlled substance was being used and for possession of a controlled substance.

While there is little else in the record which is clear, the following facts are apparent and uncontroverted. The entry of the law enforcement officers into the trailer and the subsequent arrests were made without warrants. Upon entry of the officers into the trailer and into its back bedroom nothing was seen by those officers which appeared to be a controlled substance or any paraphernalia relating thereto. Following the removal of six persons from the back bedroom, police officers found a "baggie" of marijuana in plain view lying on the floor. Other items indicating marijuana usage were thereafter found. The following day a search warrant was obtained and a search pursuant thereto turned up other items of controlled substance and paraphernalia relating thereto at places throughout the trailer. At the time of the entry of the officers into the bedroom no burning substance was observed. No person at any location in the trailer house was seen to be in actual possession of anything which was or appeared to be a controlled substance. The cursory search of the six occupants of the back bedroom produced no controlled substance nor anything which indicated that any of those six persons had been in possession of a controlled substance. No admissions or

statements of any kind were made by any persons admitting or inferring the possession of a controlled substance.

■ While the facts and circumstances as contained in the record are complex and lengthy, the law as it pertains to the facts is clear. Upon an appeal from a conviction the function of the appellate court is to examine the record to determine if competent and substantial evidence exists to support the verdict. *State v. Griffith*, 97 Idaho 52, 539 P.2d 604 (1975). Where there is substantial and competent evidence to support the verdict such will not be disturbed. *State v. Badger*, 96 Idaho 168, 525 P.2d 363 (1974). However, where evidence is insufficient to support a verdict, the verdict and judgment of conviction must be set aside. *State v. Snyder*, 71 Idaho 454, 233 P.2d 802, 33 A.L.R.2d 358 (1951). We hold that on the basis of the record in this case the evidence does not sustain a conviction on the charge of possession of a controlled substance.

While there is no doubt marijuana was being used by someone on the premises and at the time in question, there is no answer in the record as to who that person or persons may have been. While the record before us may very well have sustained a conviction on a charge of frequenting a place where a controlled substance is being used, that charge was inexplicably dismissed prior to trial.

■ The record is clear that no evidence was introduced to show that appellant-defendant Warden had *actual* possession of the marijuana. However, as was stated in *State v. Segovia*, 93 Idaho 594, 598, 468 P.2d 600, 664 (1970):

"A defendant need not have actual physical possession of marijuana to sustain a conviction for possession of it, but the state need only prove that he has such dominion and control over it as to establish constructive possession."

Here, the state rests its charge of possession on the fact that Warden had occupied the trailer prior to his arrest and thus was in possession of the premises where the controlled substance was found. Also, the state argues that Warden was on the premises and in the proximity of the controlled substance at the time of its use and at the time of the entry by the police officers. Evidence that a defendant has a possessory interest in premises on which drugs are found has often been held to establish possession of an illegal or controlled substance. Nevertheless, where as here defendant is in non-exclusive possession of the premises upon which drugs were found there can be no legitimate inference that he knew of the drugs and had control of them in the absence of other circumstances such as incriminating statements which tend to support such inference. 56 A.L.R. 3d 948, 953 (1974); *State v. Bowers*, 87 N.M. 74, 529 P.2d 300, 303 (1974); *Mulligan v. State*, 513 P.2d 180, 182 (Wyo. 1973); *Feltes v. People*, 178 Colo. 409, 498 P.2d 1128 (1972); *Petty v. People*, 167 Colo. 240, 447 P.2d 217 (1968); *People v. Antista*, 129 Cal.App.2d 47, 276 P.2d 177 (1954). *See also,* Whitebread & Stevens, "Constructive Possession in Narcotics Cases: To Have and Have Not," 58 Va.L. Rev. 751 (1972).

■ It is further clear that in the absence of other circumstances evidence showing merely presence at the time of drug use is insufficient to support and establish conviction for the crime of possession. *State v. Moses*, 24 Ariz.App. 305, 537 P.2d 1363 (1975); *Roth v. State*, 532 P.2d 1397 (Okl.Cr.1975); *McBride v. State*, 507 P.2d 63 (Okl.Cr.1973). *See also, State v. O'Mealey*, 95 Idaho 202, 506 P.2d 99 (1973); *State v. Hunt*, 91 Ariz. 149, 370 P.2d 642 (1962); *State v. Hults*, 9 Wash.App. 297, 513 P.2d 89 (1973); 25 Am.Jur.2d, "Drugs, Narcotics and Poisons," 47 n. 7 (1966). As to cases discussing the type of additional evidence which will support an inference of possession see *Clarkson v. State*, 529 P.2d 542 (Okl.Cr. 1974); *People v. Nettles*, 23 Ill.2d 306, 178

N.E.2d 361 (1961); *State v. Bowers*, 87 N.M. 74, 529 P.2d 300 (1974).

Ultimately we come to the basic proposition that a jury must find a criminal defendant guilty beyond a reasonable doubt of possessing, either actually or constructively, a controlled substance. As stated in *United States v. Holland*, 144 U.S.App.D. C. 225, 445 F.2d 701 (1971):

> "It is perfectly true that this appellant may be guilty. The trouble with absence of evidence is that it is consistent with *any* hypothesis. It is no answer to say, as the Government does, that this is a 'close case,' and therefore 'one for the triers of fact.'"

Here there was no showing that the defendant-appellant had actual possession of the substance nor is there any evidence whatsoever to support the inference merely because he was in a room where a controlled substance was later found that he is to be legitimately inferred to have been in constructive possession. In the absence of such evidence to support the inference, the verdict here must be held to have been based on nothing but speculation.

Conviction is reversed.