889 P.2d 723

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Anthony Lynn ASHLEY, Defendant–Appellant.**

No. 21254.

Court of Appeals of Idaho.

Dec. 9, 1994.

Rehearing Denied Feb. 3, 1995.

Petition for Review Denied Feb. 23, 1995.

Alan E. Trimming, Ada County Public Defender, Richard D. Toothman, Deputy Public Defender, Boise, for appellant.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

Anthony Ashley appeals from a judgment of conviction for grand theft by possession of stolen property. *See* I.C. §§ 18–2403(1) and 18–2407(1). He raises two issues. First, he asserts that the evidence presented at his jury trial was insufficient to support the verdict of guilty of grand theft.[1] Second, he contends that the district court abused its sentencing discretion by imposing a unified sentence of seven years in the custody of the Board of Correction, with three years required as the minimum term of confinement. For the following reasons, we affirm.

## SUFFICIENCY OF THE EVIDENCE

Before discussing the merits of Ashley's challenge to the sufficiency of the evidence, we will consider a threshold question raised by the State. The State contends that Ashley did not preserve the issue regarding the sufficiency of the evidence because Ashley did not first seek a ruling from the district court by moving for an acquittal or dismissal based on alleged insufficiency of the evidence. The State submits no authority supporting such a disposition at the appellate level.

After due consideration, we decline to apply the rule suggested by the State. We note that the rules of civil procedure specifically provide that, "The failure of a party to move for a directed verdict, for a judgment notwithstanding the verdict or for a new trial shall not preclude appellate review of the sufficiency of the evidence when proper as-

---

1. Ashley was also found by the jury to be a persistent violator of the law, I.C. § 19–2514, based upon evidence that Ashley previously had been convicted of four felonies. On this appeal, Ashley does not question the sufficiency of the evidence to support the jury's finding in that regard. He challenges only the verdict on the grand theft charge.

**696**

signment of error is made in the appellate court." *See* I.R.C.P. 50(b). In the absence of any rule to the contrary in the Idaho Criminal Rules, we believe that consistency between the civil and criminal rules is preferable. Accordingly, we reject the State's contention that Ashley's challenge to the sufficiency of the evidence to support the verdict has not been preserved for appellate review.

■ We thus turn to the issue raised. We note that a judgment of conviction, entered upon a jury verdict, will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Decker*, 108 Idaho 683, 701 P.2d 303 (Ct.App. 1985). On appeal, we will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Id.* In addition, the evidence is to be considered in the light most favorable to the prosecution. *Id.*

To establish its allegation that Ashley was guilty of grand theft by possession of stolen property, the State presented the following evidence. When the owner of a retail store in Boise arrived at her business on the morning of Monday, August 16, 1993, she found that the drawer in her cash register was jammed and that the counter top had been shoved and damaged. The business had been closed at the end of the day on the previous Saturday and was not open on Sunday. She called the police. When a detective arrived, the owner discovered that 51 compact discs, which were played for background music in the store, had been stolen. The police investigation determined that the locking mechanism on the exit door in the rear of the store had been stuffed with paper or cardboard so that the door would not lock. After the police left, the owner hired a locksmith who opened the cash drawer. The cash box, containing about $150 in cash together with several checks and Visa drafts from customers, was missing as were several small pieces of merchandise.

The store owner was able to make a list of the missing CDs which were worth approximately $800. One of the discs, music by a group called the "Iguanas," was still in the CD player but the box for that CD was missing along with the boxes containing the other CDs. After the police left the store, the owner called the Record Exchange—a dealer in used CDs—to alert the Record Exchange of the theft and to provide it with a list of the missing CDs. At trial, the owner identified State's Exhibit 001, consisting of 21 of the stolen CDs.

A sales clerk at the Record Exchange testified that Ashley came into the Record Exchange on the morning of August 16 with approximately 60 CDs to sell. After looking through the collection of CDs, the clerk agreed to purchase about one-third of them. In going through the CDs he found that one CD box, music by the "Iguanas," was empty. The clerk gave Ashley a check for $80 and wrote Ashley's name and driver's license number on the check stub. Within minutes after Ashley left the Record Exchange, the clerk received the phone call describing the stolen CDs. The clerk realized that among the CDs described by the owner were the ones that had just been brought in by Ashley. The clerk immediately took steps to stop payment on the check he had given Ashley. At trial, he identified Ashley as the person from whom the CDs were purchased, and he identified State's Exhibit 001 as the CDs obtained from Ashley.

Ashley testified at trial and admitted that he took a number of CDs to the Record Exchange on August 16 and that he was given a check for $80. He testified that he had purchased the CDs at a yard sale the day before he brought them into the Record Exchange.

■ The crime of grand theft by possession of stolen property requires proof that the defendant had knowledge that the property was stolen or that he possessed the stolen items under circumstances that would have reasonably induced him to believe that the property was stolen. I.C. § 18–2403(4); *State v. Major*, 111 Idaho 410, 420, 725 P.2d 115, 125 (1986). However, knowledge of the property's stolen character may be inferred

by the jury, and possession of recently stolen property without satisfactory explanation for such possession is a circumstance from which a trier of fact may infer this knowledge. *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *State v. Ralls,* 111 Idaho 485, 488, 725 P.2d 190, 193 (Ct.App.1986), *citing State v. Trowbridge,* 97 Idaho 93, 540 P.2d 278 (1975). In *Trowbridge,* the court observed:

> [T]he unsatisfactorily explained possession of recently stolen property is a circumstance tending to *infer* knowledge of the unlawful character of the property, and that circumstance taken together with a necessary quantum of other incriminating evidence, *may* be used by the jury to reach a verdict, in light of their collective common experience, and the circumstances surrounding the case.

97 Idaho at 97, 540 P.2d at 282 (emphasis in original).

■ Ashley argues that a rational jury would have accepted his explanation that he bought the CDs at a yard sale soon after the theft without knowing that the CDs were stolen. However, as noted in *Trowbridge,* whether this explanation is a satisfactory one is a question for the jury in light of all of the attendant circumstances. Here the credibility of Ashley's explanation was undermined by his admission that he could neither identify the location of the yard sale where he allegedly bought the CDs nor describe the persons from whom he made the purchases. In addition, Ashley testified that after learning that payment was stopped on the Record Exchange check because the police had confiscated the CDs, he repeatedly tried to contact the police by telephone but the police would not talk to him. This testimony was controverted by the detective who investigated the theft. It was the jury's province not to believe Ashley's explanation.

As noted, we will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. Accordingly, we hold that there was substantial evidence to support the verdict of guilty of grand theft by possession of stolen property, as found by the jury.

## SENTENCE REVIEW

■ Ashley asserts that the seven-year sentence, with a three-year minimum period of confinement, is excessive and that the district court abused its discretion by not placing him on probation. In examining the reasonableness of a sentence, we conduct an independent review of the record, focusing on the nature of the offense and the character of the offender. *State v. Young,* 119 Idaho 510, 808 P.2d 429 (Ct.App.1991). In *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1983), this Court noted that

> [A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case.

*See also State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). Later, in *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct. App.1989), we explained that the reasonableness of a sentence is determined by focusing on the probable length of confinement, which, under the Unified Sentencing Act, I.C. § 19–2513, is the minimum period of incarceration imposed by the sentencing judge. Here that period is three years. In *Sanchez,* we also observed:

> To the extent that a minimum period of confinement represents the judicially determined "price" of a crime, the criteria of retribution and deterrence are particularly important. Conversely, insofar as the minimum period establishes a prospective time frame for institutional correction programs and for evaluation of the prisoner's eventual suitability for parole, the factors of rehabilitation and protection of society are applicable.

115 Idaho at 777, 769 P.2d at 1149.

■ We further note that the decision whether to place a defendant on probation as an alternative to incarceration is a matter within the sound discretion of the trial court. *State v. Spurgeon,* 107 Idaho 175, 687 P.2d 19

**698**

(Ct.App.1984). The exercise of this discretion will not be overturned unless the appellant shows there was a clear abuse of discretion. *Id.* Here, the district court decided that Ashley's "substantial prior record" made the possibility of probation unrealistic. We find no abuse of discretion in reaching that conclusion.

■ Nor do we find that the district court imposed an unreasonable sentence. The court below determined that a sentence of seven years with three years' minimum confinement would serve to protect society from the defendant. This determination is clearly supported by the record.

Ashley was 33 years old when he was sentenced in this case. A review of the presentence report reveals a lengthy criminal record. When Ashley was 18 years old, he was convicted of his first felony, a burglary, and received three years' probation. While on probation, at age 20, he was convicted and incarcerated in a Wisconsin reformatory for two years for his second felony, strong arm robbery. A year and a half after his release, Ashley was convicted in Arizona of two more felonies, theft and criminal damage. Less than three years later, Ashley was convicted in California of his fifth felony, possession of a bad check. One year later, again in Arizona, he received his sixth felony conviction, for larceny, and was placed on probation. Four years later, in Oregon, he was convicted of the seventh felony, unauthorized use of a motor vehicle, and was sentenced to six months in jail. Two years later, in Boise, he was convicted of the present charge of grand theft. While awaiting sentencing on this matter, Ashley was charged with his ninth felony, burglary. The record does not indicate the disposition on that pending charge. During the intervening sixteen-year period since Ashley turned 18, Ashley has been charged with 60 other violations, some being misdemeanors as well as several felonies, resulting in a variety of dispositions including 12 dismissals and 10 probations. In addition to his criminal record, Ashley admitted to abusing an assortment of drugs: speed, heroin, cocaine and marijuana, which he used every day when financially able.

In light of Ashley's extensive criminal history and numerous attempts at rehabilitation through probation, the decision to impose a sentence of seven years with a fixed three-year minimum period of confinement on his conviction for grand theft and as a persistent violator, was reasonable. The sentence did not constitute an abuse of the district court's discretion.

Accordingly, the judgment of conviction and sentence are affirmed.

LANSING and PERRY, JJ., concur.

### ORDER DENYING PETITION FOR REHEARING

The State has filed a petition for rehearing, contending that this Court erred in deciding it should reach the merits of the appellant's challenge to the sufficiency of the evidence to support the jury's verdict of guilty. The State's argument is predicated upon the principle that the appellate courts should refrain from considering an issue which was not preserved for review due to the appellant's failure to first seek a ruling from the trial court upon the issue in question. As a basis for this assertion, the State points out that Ashley did not move for an acquittal on the ground of insufficiency of the evidence to support a finding of guilt, either at the close of the state's case, prior to submission of the case to the jury, or after the return of the jury's verdict.

The Idaho Reports are replete with decisions by the Idaho Supreme Court that review criminal convictions from the perspective of sufficiency of the evidence. Reflective of the Supreme Court's position is the following statement in *State v. Warden,* 97 Idaho 752, 554 P.2d 684 (1976), where the court observed:

Upon an appeal from a conviction the function of the appellate court is to examine the record to determine if competent and substantial evidence exists to support the verdict. *State v. Griffith,* 97 Idaho 52, 539 P.2d 604 (1975). Where there is substantial and competent evidence to support the verdict such will not be disturbed. *State v. Badger,* 96 Idaho 168, 525 P.2d 363 (1974). However, where evidence is insufficient to

support a verdict, the verdict and judgment of conviction must be set aside. *State v. Snyder,* 71 Idaho 454, 233 P.2d 802, 33 A.L.R.2d 358 (1951).

97 Idaho at 754, 554 P.2d at 686. It seems that the only prerequisite is that the appellant must specify the insufficiency of the evidence as an issue on appeal. In the context of criminal cases, we do not find any discussion in prior decisions of the Supreme Court requiring the question of sufficiency of the evidence to be raised in the trial court before it can be addressed on appeal.

█ The State argues that *State v. Watson,* 99 Idaho 694, 587 P.2d 835 (1978), supports the position asserted by the State in the instant proceeding. We disagree. In *Watson,* the defendant had moved for a directed verdict of acquittal at the end of the prosecution's case in chief, which was denied. The defendant then presented evidence on his own behalf, and did not renew his motion at the close of the entire case. On appeal, the Supreme Court held that the presentation of evidence by the defendant waived the right to question the denial of his motion for acquittal based solely on the evidence presented in the state's case in chief. However, the case. does not otherwise stand for the proposition that the Supreme Court will refuse to entertain a contention of insufficiency of evidence to support a conviction unless the claim is first submitted to the trial court. Indeed, the Supreme Court quoted an Oregon decision, *State v. Gardner,* 231 Or. 193, 372 P.2d 783, 784 (1962), for the view that:

> If a defendant elects not to stand on his motion and presents evidence in his defense, *the appellate court must consider all the evidence and if it is sufficient to sustain the conviction,* the defendant cannot complain that his motion for acquittal made at the close of the state's case was denied. (Emphasis supplied.)

This observation is consistent with the proposition that the appellate court may review the sufficiency of the totality of the evidence presented at trial, when raised as an issue on appeal, regardless of whether the defendant also sought review of that question in the trial court.

Prior to 1967, the rule seemed well established, both in criminal cases and civil actions, that:

> This court has always maintained its authority to review the sufficiency of the evidence to sustain a verdict, when properly assigned, regardless of whether that issue was presented to the trial court by one of the motions mentioned. Our long-established rule that we will not upset a verdict which is supported by substantial and competent evidence, from which reasonable minds might draw conflicting conclusions, is a complete and adequate safeguard of the integrity of the jury verdict, and of a litigant's constitutional right thereto. A verdict not so supported is an unjust verdict. No litigant has a right, constitutional or otherwise, to such a verdict. A fair jury trial is a prime requisite of due process.

*Christensen v. Stuchlik,* 91 Idaho 504, 509, 427 P.2d 278, 283 (1967) (Taylor, C.J., concurring and dissenting). In *Christensen,* the majority opinion overruled a long-standing principle followed by the court in civil actions, and held that the adoption of the civil rules of procedure required a motion for directed verdict or for new trial before the Supreme Court would review the record of a jury trial on a claim of insufficiency of the evidence to support the verdict. This ruling was subsequently changed by amendment to I.R.C.P. 50(b) the next year, in 1968, by adding the language that: "The failure of a party to move for a directed verdict, for a judgment notwithstanding the verdict or for a new trial shall not preclude appellate review of the sufficiency of the evidence when proper assignment of error is made in the appellate court." It is our belief that this amendment reflected the immediate reaction of the practicing bar to the decision in *Christensen* which had altered the previous long-standing rule discussed in Chief Justice Taylor's dissent. It appears that the circuitous route traced by *Christensen* and I.R.C.P. 50(b) left unchanged the well-established position coextensively existing with respect to criminal actions. We see no need to travel a parallel path in the development of the Idaho Criminal Rules and arrive at the same point

expressed in the amendment to I.R.C.P. 50(b).

There is another aspect to the instant case that has a connection to the principle expressed in *Christensen*. After the amendment to Rule 50(b), the Supreme Court had occasion to review the implication of that amendment, in *Stephens v. New Hampshire Ins. Co.*, 92 Idaho 537, 447 P.2d 14 (1968). *Stephens* was a civil action to recover damages to a potato cellar allegedly caused by a windstorm. On appeal, the appellant questioned whether the claim for the loss fell within the terms of an insurance policy, and whether the evidence at trial (particularly, the testimony of an expert witness) was sufficient to support the respondent's theory that a windstorm caused the cellar to collapse. In response to the sufficiency of evidence issue, the respondent claimed that the appellant's failure to renew a motion for directed verdict at the close of all the evidence precluded the Supreme Court from reviewing the sufficiency of the evidence to sustain the verdict and judgment, citing *Christensen*. Notwithstanding the respondent's assertion, the Supreme Court addressed the merits of the argument on the sufficiency of the evidence. In this regard, after noting that the amendment to Rule 50(b) had been adopted subsequent to the decision in *Christensen*, the court said:

> Should this court be precluded from reviewing the sufficiency of the evidence to support the verdict and judgment, such would automatically result in an affirmance of the verdict and judgment which is in respondent's favor; likewise the review of the evidence has the same result; hence respondent is not prejudiced by rejection of his contention on this issue.

92 Idaho at 542, 447 P.2d at 19.

■ Similarly, our review of the sufficiency of the evidence in the present case has resulted in the affirmance of the verdict—the same result as would occur if we applied the principle suggested by the State by not reviewing the sufficiency of the evidence question. Under this circumstance, we fail to see, as did the Supreme Court in *Stephens*, how the State as the respondent has been prejudiced by the rejection of its contention that we are precluded from reviewing the sufficiency of the evidence to support the verdict.

We note further the possibility of a disturbing result from adoption of the State's position. As the State no doubt is aware, there has been an increased use of the Post-conviction Relief Act to raise numerous questions relating to the effective assistance of counsel. The specter of such claims flowing from defense counsels' failure to seek review by the trial court of the sufficiency of evidence to support convictions may have a great impact on the courts. And yet, even where the trial court first reviews the sufficiency of the evidence either at trial or upon post-conviction proceedings, the trial court's determination can be considered again on appeal, de novo. Appellate review can just as easily be conducted on the existing trial record on direct appeal from judgments of conviction, without first having to exhaust the limited time and resources of the trial courts through the post-conviction process under the guise of claims of ineffective assistance of counsel.

Accordingly, we decline to apply the rule suggested by the State. The State's petition for rehearing is DENIED.